**RESOLUTION TRUST CORPORATION,**
Plaintiff–Appellee,

v.

**Douglas B. THOMPSON, Defendant–Appellant.**

No. 92–2252.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1993.
Decided March 31, 1993.

---

Mitchell L. Marinello, Timothy J. Miller (argued), Novack & Macey, Chicago, IL, for plaintiff-appellee.

Cristofer E. Lord (argued), John L. Huff, Huff & Gaines, Chicago, IL, for defendant-appellant.

Before CUDAHY, POSNER, and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

Peoples Bank for Savings brought this diversity suit against Douglas Thompson to recover the unpaid balance of a business loan that it had made to Thompson. After the bank became insolvent, the Resolution Trust Corporation was appointed receiver and substituted as the plaintiff. In response to the RTC's motion for summary judgment, Thompson alleged that the RTC had orally agreed to forgive the unpaid balance of the loan in exchange for his contributing his time and money to a real estate project with which the bank had been involved, and that he had done so. The RTC replied that the agreement, not being in writing, was unenforceable. The district judge agreed, granted summary judgment for the RTC, and later entered a final judgment in its favor from which Thompson appeals.

The judge based his decision on 12 U.S.C. § 1823(e), which provides, so far as pertinent here, that "no agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it ... as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—(1) is in writing, [and] (2) was executed by the depository institution." (The "Corporation" referred to is the Federal Deposit Insurance Corporation, but the provision is made applicable to the Resolution Trust Corporation as well by 12 U.S.C. § 1441a(b)(4)(A).) The RTC has declined to defend the decision on the district judge's ground, apparently persuaded by Thompson's argument that the statute is inapplicable to an oral agreement with the RTC itself, as distinct from an oral agreement with the financial institution that the RTC has taken over. Thompson's argument is supported not only by the statute's language—the RTC is not an "insured depository institution"—but by its purposes, which are to "prevent fraudulent insertion of new terms [in loan agreements], with the collusion of bank employees, when a bank appears headed for failure," *Langley v. FDIC*, 484 U.S. 86, 92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987), and to enable the governmental authority, the FDIC or the RTC, to determine the value of the assets of a troubled financial institution from the institution's books, without the uncertainty that would be injected if the value were cut down by oral agreements. *FDIC v. O'Neil*, 809 F.2d 350, 353 (7th Cir.1987). Neither purpose is engaged when the oral agreement is made by the authority itself, rather than the bank, with the borrower.

 Instead the RTC defends the decision on the basis of the Illinois Credit Agreement Act, Ill.Rev.Stat. ch. 17, ¶¶ 7100–7103. It is entitled to defend on this ground, though not addressed by the district judge, because the ground was asserted in the district court and never waived. *United States v. Rockford Memorial Corp.*, 898 F.2d 1278, 1281 (7th Cir. 1990). Thompson had a full opportunity, which he took, to contest the ground in his reply brief.

The Act requires a "credit agreement," defined as "an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards," to be in writing, and signed by both the creditor and the debtor. ¶¶ 7101(1), 7102. A "creditor" is defined as "a person engaged in the business of lending money or extending credit." ¶ 7101(2). The parties agree that, provided the RTC is a creditor within the meaning of the Act, it is subject to it, notwithstanding

its status as a federal agency. We can find no cases on the point.

A recent statute—it took effect in September 1989—the Illinois Credit Agreement Act has not been judicially interpreted, and it has no usable legislative history; nor can we find parallel statutes in other states. Nevertheless it is apparent that the oral agreement alleged by Thompson is a "credit agreement" within the meaning of the Act—if the RTC is a "creditor" within the meaning of the Act. We think it is. The statute is evidently designed to impose a strong form of the Statute of Frauds— strong because, unlike the usual Statute of Frauds, *Callaghan v. Miller*, 17 Ill.2d 595, 597, 162 N.E.2d 422, 424 (1959); E. Allan Farnsworth, *Contracts* § 6.8 at p. 435 (2d ed. 1990), it requires that the agreement itself be signed, and by both parties—on business loans made by financial institutions. (How much further the words "or extending credit" extend the statute we need not consider.) It unquestionably applied to the loan by Peoples Bank to Thompson before the bank entered receivership. We do not think the appointment of a receiver changed anything. The receiver until it sold or liquidated or otherwise disposed of the bank was operating the bank. It stood in the bank's shoes. If the bank was a creditor within the meaning of the Act, as no one doubts, so was the receiver. We can see no reason why the happenstance of receivership should affect the applicability of the statute—especially where the receiver is an institution whose sole function is to operate financial institutions, albeit temporarily, until it can dispose of them.

If the statute in question applied to landlords rather than to lending institutions, a receiver who took over a building, collected rents, paid maintenance, etc., on an interim basis because of the owner's insolvency, as in *In re James Wilson Associates*, 965 F.2d 160, 164 (7th Cir.1992), would be deemed the landlord. Similarly, the RTC became a lending institution, albeit only temporarily, when it took over a lending institution and operated it, collecting past due loans (as in this case) and doing the other things that the lending institution itself was doing before it was placed into receivership. Any other conclusion would make the application of the statute depend on what in terms of its purposes seems a pure fortuity—who is in control of the lending institution that made the original credit agreement that is in issue.

AFFIRMED.