**WESTINGHOUSE ELECTRIC CORPORATION,**
Plaintiff,

v.

**Daniel E. McLEAN and Donald Tolva, Defendants.**

No. 94 C 4228.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 27, 1996.

Michael Small, Alan Philip Solow, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for plaintiff.

Michael Keith Fridkin, Sachnoff & Weaver, Ltd., Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

COAR, District Judge.

Before this court is Plaintiff Westinghouse Electric Corporation's ("Westinghouse"'s) motion for summary judgment pursuant to Fed.R.Civ.P. 56. In its complaint, Westinghouse Electric Corporation ("Westinghouse") requests enforcement of a personal guarantee executed by defendant Daniel E. McLean, in the amount of $627,168.78 plus interest (the "McLean Guaranty"), and a personal guarantee executed by defendant Donald Tolva, in the amount of $100,000 plus interest (the "Tolva Guaranty"), both issued in favor of Westinghouse's predecessor Westinghouse Credit Corporation ("WCC") (together the "1991 Guarantees"). Westinghouse also asks this court to order McLean to provide his personal financial statement for calendar year 1993 to Westinghouse. Defendants have asserted affirmative defenses of fraud and wrongful economic duress and have made similar counterclaims.

### I. BACKGROUND

In December of 1987, Four Seasons Club Development Corporation ("Four Seasons"),

a corporation owned by Daniel E. McLean ("McLean") and Donald Tolva ("Tolva", together "Defendants"), entered into a Construction Loan Agreement with WCC (the "Construction Loan Agreement") and executed a note in favor of WCC due to mature on December 1, 1989 (the "1987 Note"), which McLean and Tolva personally guaranteed.

In September of 1988, McLean purchased Tolva's shares of Four Seasons and indemnified Tolva in connection with liabilities related to the development, including Tolva's obligations under his original guaranty.

In April of 1989, Four Seasons exhausted the interest reserve provided for under the Construction Loan Agreement and began making monthly interest payments out of funds loaned to Four Seasons by McLean.

Four Seasons received two extensions on the 1987 Note in November of 1989 and May of 1990. The May 1990 extension was memorialized in a letter agreement between Four Seasons and Westinghouse (the "Second Extension Agreement"). Under the Second Extension Agreement, Westinghouse had the power to disburse additional funds to pay the interest due on the note and other project expenses if it so chose. The Defendants allege, and Westinghouse denies, that pursuant to this provision, WCC's employee Michael Healey promised that WCC would advance further funds to continue the project. (Westinghouse's Local Rule 12(N) Responses to Defendants Statement of Facts, hereinafter "12(N) Response" at ¶ 47).

Four Seasons was unable to pay the interest on the 1987 Note for the period of June 1, 1990, to June 30, 1990. WCC did not make additional disbursements to pay the interest due.

On July 26, 1990, WCC sent a notice of default to Four Seasons, McLean and Tolva. At the time this notice was sent, Four Seasons owed WCC $1,477,009.01.

In August, 1990, McLean, on behalf of himself, Four Seasons and Tolva, offered to turn over the project to WCC by means of a deed in lieu of foreclosure in exchange for a release of obligations to WCC under the Construction Loan Agreement, the 1987 Note, the original guarantees and both extensions. At this time, and through 1991, the project was significantly less valuable than the outstanding loan balance. In other words, at this time, the Defendant's obligations to WCC were undersecured.

In January 1991, Four Seasons and McLean agreed to the basic terms of an agreement whereby WCC would accept: (1) a deed in lieu of foreclosure; (2) a note in the amount of $500,000 due in three years (the "1991 Note"); and (3) two guarantees, one executed by McLean and one by Tolva. McLean was required to execute a guarantee in the amount of $627,168.78 plus interest (the "McLean Guaranty"), and Tolva executed a personal guarantee in the amount of $100,000 plus interest (the "Tolva Guaranty"), both issued in favor of Westinghouse's predecessor Westinghouse Credit Corporation ("WCC") (together the "1991 Guarantees"). The Defendants allege, and Westinghouse denies, that Healey promised the Defendants that Westinghouse would not enforce the note when it came due in three years. (12(N) Response at ¶ 56).

On October 29, 1993, Westinghouse sent Four Seasons, McLean and Tolva a letter notifying them that the 1991 note would be due in full on January 29, 1994.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928 (7th Cir.1995); *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis,* 806 F.2d 146, 149 (7th Cir.1986). The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202

(1986). If the moving party meets this burden, the non-moving party must then respond by setting forth specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *see Curtis v. Bembenek*, 48 F.3d 281 (7th Cir.1995). All reasonable inferences from the record are to be drawn in favor of the non-moving party. *Johnson v. Runyon, et al.*, 47 F.3d 911 (7th Cir.1995); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir.1994).

### III. ANALYSIS

In the plaintiffs motion for summary judgment, Westinghouse asserts that their is no genuine issue of material fact because: (1) Defendants' counterclaims and defenses are barred by the Illinois Credit Agreement Act, 815 ILCS § 160, because they rely on the existence of an oral credit agreement; (2) Defendants failed to assert justifiable reliance in their fraud counterclaim and defense as a matter of law; and/or (3) Defendants counterclaim and defense of wrongful economic duress must fail because Westinghouse did not act improperly and the Defendants were not unable to exercise their free will.

#### A. Applicability of the Act

■ In order to address Westinghouse's first argument, the court must determine whether the Illinois Credit Agreement Act (the "Credit Act") applies to this situation. The Credit Act states in relevant part:

For the purpose of this Act, the following terms have the meanings given them;

'Credit Agreement' means an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards.

815 ILCS 160/1.

Credit Agreements to be in writing. A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

815 ILCS 160/2.

Westinghouse argues that Defendants' counterclaims and defenses, insomuch as they rely on the alleged oral promises of Healey, are barred by the Credit Act and, therefore, Westinghouse is entitled to judgment as a matter of law. Defendants contend that the promise they received was a promise to *forgive* (not forbear) the debt and, therefore, the statements made by Healey are not credit agreements covered by the Credit Act.

■ Courts have uniformly barred the claims and defenses of debtors which have relied on the existence of oral credit agreements. *See Resolution Trust Corporation v. Thompson*, 989 F.2d 942 (7th Cir.1993) (court barred claims and defenses of debtor based on alleged oral promise of creditor to forgive unpaid balance of loan); *Whirlpool Financial Corporation v. Sevaux*, 874 F.Supp. 181 (N.D.Ill.1994) (hereinafter *"Whirlpool II"*) (court barred all claims and defenses relying on alleged oral promise to finance a loan); *General Electric Capital Corporation v. Donogh Homes*, No. 93 C 5614, 1993 WL 524814 (N.D.Ill. Dec. 15, 1993) (court barred all claims and defenses related to an alleged oral agreement to extend or modify existing written credit agreements); *McAloon v. Northwest Bancorp, Inc.*, 274 Ill.App.3d 758, 211 Ill.Dec. 281, 654 N.E.2d 1091 (2d Dist.1995) (court barred all claims and defenses founded on alleged oral representations by bank to lend money); *First National Bank in Staunton v. McBride Chevrolet, Inc.*, 267 Ill.App.3d 367, 204 Ill.Dec. 676, 642 N.E.2d 138 (4th Dist.1994) (court barred all claims and defenses relying on oral promise of bank to hold a check overnight). The Credit Act bars all claims, whether sounding in contract or tort. *First National Bank in Staunton v. McBride Chevrolet, Inc.*, 267 Ill.App.3d at 372, 204 Ill.Dec. at 680, 642 N.E.2d at 142. Moreover, and importantly, the Credit Act is to be construed broadly. *McAloon v. Northwest Bancorp, Inc.*, 274 Ill.App.3d 758, 762,

491

211 Ill.Dec. 281, 284, 654 N.E.2d 1091, 1094 (2d Dist.1995).

Defendants seek to preserve their claims and defenses by distinguishing between "forbearing" and "forgiving" a debt, relying on *Whirlpool Financial Corporation v. Sevaux*, 866 F.Supp. 1097 (N.D.Ill.1994) (hereinafter, "*Whirlpool I* ").[1] In *Whirlpool I*, the court rejected the plaintiff's argument that an alleged promise to invest $17 million in a company, which would in effect also extinguish a $1 million note, was a credit agreement within the meaning of the Credit Act. The court defined "forbearance" as an "act by which a creditor *waits for payment of a debt* due him by debtor after it becomes due." *Id.* at 1100 (emphasis in original) (citing *Blacks Law Dictionary* 664 (5th ed. 1979)). The *Whirlpool I* court concluded that this definition and the Credit Act's failure to include "forgive" in its definition of credit agreements limited the Credit Act's application to promises to delay the payment of loans and not the complete elimination of debt. *Id.* In addition, that court distinguished *General Electric Capital Corporation*, No. 93 C 5614, 1993 WL 524814 (N.D.Ill. Dec. 15 1993), as having addressed a different factual situation and *Resolution Trust Corporation v. Thompson*, 989 F.2d 942 (7th Cir.1993), both cited by Westinghouse, as not directly addressing this issue of forgiveness versus forbearance at all in its abbreviated opinion that solely discussed the definition of a creditor within the Credit Act. *Whirlpool I*, 866 F.Supp. at 1101 n. 1.

The Defendants argue that this case is governed by the more limited definition of "forbear" which the *Whirlpool I* court adopted. This court disagrees, especially in light of the mandate that the Credit Act be broadly construed. While primarily addressing the issue of the definition of the word "creditor," the Seventh Circuit indirectly addressed the issue of forgiveness of a debt as a credit agreement covered by the Credit Act

in *Resolution Trust Corporation v. Thompson*, 989 F.2d 942 (7th Cir.1993) (hereinafter "*Thompson* "). In *Thompson*, the debtor alleged that the RTC promised to forgive the unpaid balance of a loan in exchange for the debtor's contribution of time and money to a real estate project. In affirming the grant of summary judgment for the RTC, the court stated, "[I]t is apparent that the oral agreement alleged by Thompson is a 'credit agreement' within the meaning of the Act." *Id.* at 944. The *Thompson* approach takes a more realistic view of the economic events taking place. The narrow view of forbearance taken in *Whirlpool I* is hyper-technical and inconsistent with the admonition to construe the statute broadly. Therefore, we respectfully disagree with our sister court in *Whirlpool I* and conclude that the Credit Act's definition of a "credit agreement" encompasses oral agreements to *forgive*, as well as forbear, a debt.[2]

Thus, the Credit Act bars actions related to alleged oral promises, including those which purport to forgive (or forbear) debt. This court will now address each of the Defendants counterclaims and defenses in turn and determine whether either of the two arguments (fraud and duress) are barred by the Credit Act.

### 1. Fraud

In Defendants' fraud counterclaim and affirmative defense, they contend that they would not have signed the 1991 Note and the 1991 Guarantees but for the Healey's alleged false statements that the documents would not be enforced. Defendants further argue that Westinghouse at all times intended to enforce the 1991 Note and Guarantees and that Westinghouse and Healey knew that Healey's statements were false at the time they were made. Westinghouse argues for summary judgment on two grounds. First, it claims that the counterclaim and defense is barred by the Credit Act. Second, Westinghouse argues that the defendants did not

---

**1.** The court first notes that although there is some basis for defendants' reliance on this case, a second opinion in this same case, *Whirlpool II*, 874 F.Supp. 181, *supra*, concluded that the Credit Act did in fact bar the relevant claims.

**2.** Thus, whether Westinghouse or one of its representatives did, in fact, promise to forgive the debt at issue is irrelevant for the purposes of this dispute. Even if a representative had promised to forgive the debt, that promise could not be enforced, pursuant to the Credit Act, because it was not in writing.

justifiably rely on the oral promise because the text of the 1991 Note and the 1991 Guarantees directly contradict the alleged oral promises. Because the first argument has merit, this court will discuss it and forgo a discussion of the second.

The statements that the Defendants rely upon in making their fraud arguments were orally stated by Westinghouse's representative Healey. From the discussion above, it is plain that this is exactly the type of oral promise that was contemplated to be barred by the Credit Act. Nonetheless, Defendants argue that the Credit Act should not apply to claims and defenses of fraud because of the harsh results that would flow from such an application. Even if this court were free to decide this issue on policy grounds, it is doubtful that approach would assist defendants. As I read the Credit Act, the legislature concluded that justice was best served by putting all parties to covered transactions on notice that the agreement would be enforced as written. Winks and nods and whispered promises to deviate therefrom would not be enforced. Thus on notice, entities like the defendants would insist that the *entire* agreement be in writing. The legislature exempted consumer transactions so as to ensure that persons who were perhaps not able to understand the notice would be excluded. Defendants must then argue that some nonconsumers fall through the cracks and be subjected to a harsh result because they did not understand the notice or the consequences thereof. However, Illinois courts have concluded that they must apply the act even in the face of the harsh consequences. *See, e.g., First National Bank in Staunton v. McBride Chevrolet, Inc.,* 267 Ill.App.3d at 372–73, 204 Ill.Dec. at 680, 642 N.E.2d at 142 ("We recognize such an [broad] interpretation [of the Credit Act] causes a harsh result for bank customers in some circumstances. The Act is very broadly worded, however, and dictates such a result.").

In addition, Defendants argue that the Credit Act has never been extended to cover cases of fraud, citing *Federal Deposit Insurance Corp. v. Bruno,* 777 F.Supp. 1432 (N.D.Ill.1991) (hereinafter *"Bruno "*). While this may have been true at the time *Bruno* was decided (which was decided relatively soon after the Credit Act was first enacted) it no longer is the case. For example, in *Whirlpool II* (a later opinion in the same case as *Whirlpool I )* the court barred all claims and defenses related to the oral promises, including those alleging fraud in the inducement. *Whirlpool II,* 874 F.Supp. 181. The *Whirlpool II* Court distinguished *Bruno,* by concluding that the difference in the posture of the two cases [3] and the subsequent development of Illinois case law [4] did not require the court to allow the fraud claims to survive summary judgment. *Whirlpool II,* at 188 n. 4.

■ These results are consistent with the perceived intent of the Credit Act: to combat lender liability claims filed primarily as a negotiating ploys. Kouri & Karnopp, *An Act in Relation to Credit Agreements: A Statutory Defense to Lender Liability,* 78 Ill.B.J. 348 (1990). For these reasons, Defendants' fraud counterclaim and defense based on an oral promise to forgive a debt are barred by the Credit Act as actions related to a credit agreement.

### 2. Economic Duress

■ The Defendants next affirmative defense and counterclaim sounds in economic duress. The Defendants argue here that "Westinghouse's refusal to provide the necessary and expected funding for completing Four Seasons, coupled with its deliberate lie to coerce McLean and Tolva into signing the guaranties, constitute economic duress rendering the guaranties unenforceable." Memo in Opposition at 13.

■ Economic duress is present when (1) a wrongful act (2) induces a party to form a

---

**3.** *Bruno* was an action to open a confession judgment and *Whirlpool II* was a motion for summary judgment.

**4.** "The Fourth District of the Illinois Court of Appeals concluded, "There is no limitation as to the type of actions by a debtor which are barred

by the Act, so long as the action is in any way related to a credit agreement." *First National Bank in Staunton v. McBride Chevrolet, Inc.,* 267 Ill.App.3d 367, 372, 204 Ill.Dec. 676, 680, 642 N.E.2d 138, 142 (4th Dist.1994).

contract by depriving him of the exercise of free will. *Resolution Trust Corporation v. Ruggiero*, 977 F.2d 309, 313 (7th Cir.1992); *Wallenius v. Sison*, 243 Ill.App.3d 495, 503, 183 Ill.Dec. 448, 453, 611 N.E.2d 1096, 1101 (1st Dist.1993). Defendants contend that WCC committed two wrongful acts: 1) Healey's alleged statements made to fraudulently induce the Defendants to sign the 1991 Note and the 1991 Guarantees; and 2) WCC's failure to disburse additional funds pursuant to its obligation under the Second Extension Agreement. The court will consider each separately.

Regarding the first alleged wrongful conduct, the Defendants once again rely on Healey's alleged statements that WCC would not enforce the 1991 Note and the 1991 Guarantees. Defendants have not submitted any case law, nor can this court reason to a rule which requires that a fraud claim trumps or precludes the application of the Credit Act. For the reasons already discussed, Defendants' reliance on these statements for establishing the wrongful conduct element of their economic duress argument is barred by the Credit Act because these statements are acts related to a credit agreement that are not in writing.

For Defendants' second argument of wrongful conduct to succeed, the Defendants must establish that WCC had an *obligation* to disburse funds under the Second Extension Agreement and then wrongfully failed to disburse those funds. The Defendants cited *First Nat'l Bank of Cicero v. Sylvester*, 144 Ill.Dec. 24, 30–31, 554 N.E.2d 1063, 1069–70, 196 Ill.App.3d 902, 909–10 (1st Dist.), *app. denied*, 133 Ill.2d 555, 149 Ill.Dec. 320, 561 N.E.2d 690 (1990) in support of their position. While this case does stand for the proposition that the refusal to lend money can give rise to liability based on a line of credit agreement, the court does not discuss how this theory interacts with the Credit Act, and therefore it is distinguishable from the case at bar.[5] The written agreement permits, but does not require, the disbursement.

Healey's oral statements are necessary to provide that element and the Credit Act precludes reliance on what Healey said.

The Defendants allege that WCC had an obligation to disburse funds pursuant to two theories. First, Defendants allege that Healey promised that WCC would disburse such funds. However, this promise is, at a minimum "related to a credit agreement," 815 ILCS 160/2, and, therefore, any action related to it is barred by the Credit Act because it is not in writing.

The Defendants' second argument gives this court more reason to pause. Defendants argue that WCC had discretion in disbursing the funds under the terms of the Second Extension Agreement and WCC exercised bad faith and unfair dealing by exercising its discretion improperly. Defendants contend that they were *entitled* to additional funds under the agreement because at the time of the request they had satisfied all conditions of the agreement for disbursement, and WCC exercised bad faith in not advancing additional funds. The Second Extension Agreement provides in relevant part,

> Notwithstanding any language to the contrary, in the Construction Loan Agreement or any of the other Loan Documents, WCC shall not be obligated to fund to the borrower any additional proceeds under the loan, nor shall borrower complete any additional improvements on the property unless otherwise approved by WCC in writing.

Westinghouse's 12(M) Statement, Appendix 6, Exhibit 26.

A covenant of good faith and fair dealing is implied in every contract. *Capital Options Investments v. Goldberg Bros.*, 958 F.2d 186, 189 (7th Cir.1992); *Northern Trust Company v. VIII South Michigan Associates*, 276 Ill.App.3d 355, 367, 212 Ill.Dec. 750, 759, 657 N.E.2d 1095, 1104 (1st Dist.1995). Contractual discretion must be exercised reasonably and not arbitrarily or capriciously.

---

5. The two other cases Defendants cited to this court in support of this argument, *Gerber v. First Nat'l Bank of Lincolnwood*, 332 N.E.2d 615, 30 Ill.App.3d 776 (1st Dist.1975) and *Carrico v. Delp*, 490 N.E.2d 972, 95 Ill.Dec. 880, 141 Ill. App.3d 684 (4th Dist.1986), suffer from the same problem of lack of discussion regarding the Credit Act's application to the claims pursuant to lines-of-credit agreements.

*Capital Options Investments v. Goldberg Bros.*, 958 F.2d 186, 189 (7th Cir.1992); *Resolution Trust Corporation v. Holtzman*, 248 Ill.App.3d 105, 112, 187 Ill.Dec. 827, 833, 618 N.E.2d 418, 424 (1st Dist.1993). The term "good faith" refers to "an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting." *Kham & Nate's Shoes No. 2 v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990).

WCC's action of not providing further funding was contemplated at the time of the agreement, as evidenced by the phrase "WCC shall not be obligated" in the Second Extension Agreement. As a result, WCC did not exercise bad faith by enforcing the explicit provision of the Second Extension Agreement. Moreover, there is no evidence of WCC acting illegally or arbitrarily or capriciously in denying further funding. Thus, WCC exercised its right to decide whether to disburse further funds properly when it refused to advance further funds to the Defendants, and thus there was no wrongful act upon which a claim of economic duress could lie.

Because Defendants have failed to establish any wrongful conduct by WCC, their counterclaim and affirmative defense of economic duress are dismissed.[6]

### B. Plaintiff's Claims

Upon the dismissal of the Defendants' counterclaims and affirmative defenses, Westinghouse seeks to enforce the 1991 Guarantees pursuant to this motion for summary judgment. Count I of WCC's complaint seeks enforcement of the McLean Guaranty, which as of July 1, 1994 was valued at $627,168.78 plus costs and fees. Count II of the complaint seeks to enforce the Tolva Guaranty in the amount of $100,000.00 plus costs and fees.

Under Illinois law, a prima facie case for enforcement of a guaranty is established upon proof of: (1) original indebtedness, (2) the debtor's default and (3) the guaranty. *Mid–City Indus. Supply Co. v. Horwitz*, 132 Ill.App.3d 476, 483, 87 Ill.Dec. 279, 285, 476 N.E.2d 1271, 1277 (1st Dist.1985); *see also United Air Lines v. ALG, Inc.*, 912 F.Supp. 353, 357 (N.D.Ill.1995). The Defendant's do not contest the existence of the debts evidenced by the 1990 Note, attached as exhibit B to WCC's complaint, (12(N) at ¶ 30), nor do they contest the existence of the guarantees attached as exhibits A and C to Westinghouse's complaint. (12(N) at ¶ 31). However, Defendants do contest the validity of those debts. As discussed above, the Defendants' arguments in this regard are without merit. Thus, there is proof of the original indebtedness, and the first prong of the test is satisfied. The second prong of the test, the debtor's default, is also not contested by the Defendants. Finally, the Defendants do not contest that they signed guarantees that are attached as exhibits A and C to the complaint. Thus, Westinghouse has proven that there is no genuine issue of material fact, and it is entitled to judgment as a matter of law on counts I and II of its complaint.

### CONCLUSION

WHEREFORE, for the foregoing reasons, Westinghouse's motion for summary judgment is granted as to the liability of Daniel E. McLean and Donald Tolva. Westinghouse shall file an affidavit as to its damages, including contractual fees and costs, by September 11, 1996. Defendants may file written objections thereto by September 24, 1996. If objections are filed, a hearing thereon is hereby set for December 3, 1996 at 1:30 p.m.

---

**6.** The Defendants' failure to establish the first requisite element of economic duress makes it unnecessary for this court to discuss the existence of the second element, inability to exercise free will.