TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, Plaintiff-Appellee, v. LA SALLE NATIONAL BANK, as Trustee, *et al.*, Defendants-Appellants.

Second District   Nos. 2—96—1423, 2—97—1115, 2—97—1116, 3—97—0299 cons.

Opinion filed March 6, 1998.—Rehearing denied April 2, 1998.

Keith E. Roberts, Sr., and Rosemarie Calandra, both of Donovan & Roberts, P.C., of Wheaton, and Kevin M. Forde and Mary Anne Mason, both of Kevin M. Forde, Ltd., of Chicago, for appellants.

Watson B. Tucker, Beverley J. Klein, Craig E. Reimer, and James C. Schroeder, all of Mayer, Brown & Platt, and Robert W. Glantz, of Ross & Hardies, both of Chicago, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Defendants appeal from a summary judgment entered by the circuit court of Du Page County against them and in favor of plaintiff, Teachers Insurance and Annuity Association of America. The trial court ruled that the Credit Agreements Act (Act) (815 ILCS 160/0.01 *et seq.* (West 1996)) barred defendants' affirmative defenses and counterclaims in plaintiff's action to foreclose a mortgage. Defendants raise the following issues for review: whether the Act barred their affirmative defenses and counterclaims; and whether applying the Act to bar their affirmative defenses and counterclaims was unconstitutional.

Plaintiff held a mortgage on real property improved with a commercial office building (the building) in Naperville known as 200 Park Plaza (the property). The mortgage secured two notes with an aggregate original indebtedness of $32,800,000 (collectively, the loan).

The First National Bank of Chicago was the original mortgagee.

Defendant La Salle National Bank, as trustee of a land trust, was the mortgagor. Defendant 200 Park Plaza Associates (200 PPA), a limited partnership, was the sole beneficiary of the land trust. Defendant W/H Partnership No. 2, a limited partnership, was the general partner of 200 PPA. The individual defendants are general partners of W/H Partnership No. 2. Defendant Walsh, Higgins & Co. (Walsh, Higgins), a construction and management company, constructed the building and managed the building from the time it was completed until the resolution of this action.

In September 1994, the tenant that had leased the entire building since it was opened in 1987 advised 200 PPA that it did not intend to renew its lease when the lease expired on September 30, 1995. 200 PPA immediately informed plaintiff of the tenant's decision and advised plaintiff that the loss of the building's sole tenant necessitated a restructuring of the loan.

Between October 1994 and June 1995, the parties engaged in periodic discussions regarding restructuring the loan. The parties never executed a written agreement to restructure the loan.

In each of their affirmative defenses and counterclaims, defendants allege that during their discussions with plaintiff regarding a restructuring of the loan, plaintiff indicated that it required certain terms in order to agree to a restructuring. In an attempt to satisfy these terms, defendants developed and presented to plaintiff a recapitalization plan that included the following terms: (1) a capital contribution of $1 million by 200 PPA; (2) third-party financing of tenant improvements to the property; (3) an initial below-market interest rate coupled with a retroactive rent credit; (4) graduated increases in the interest rate during the life of the loan; and (5) a guaranteed "look back" rate of return based on a retrospective review of the transaction at the end of the loan term.

Defendants also allege that at various times during the restructuring discussions between February 3, 1995, and June 29, 1995, different spokespersons for plaintiff made statements to defendants' agents that led defendants to conclude that the proposed restructuring plan was generally acceptable to plaintiff and that only details needed to be worked out in order to finalize a restructuring agreement. Defendants further allege that on June 29, 1995, a spokesperson for plaintiff advised defendants that the proposed restructuring would not work and that plaintiff expected defendants to fund improvements without third-party financing. Plaintiff later added a requirement that defendants contribute $8 million toward improvements on an unsecured basis.

Defendants' affirmative defenses and counterclaims allege that as

a result of plaintiff's refusal to comply with the restructuring plan as it was proposed prior to June 29, 1995, defendants lost two large leases. Defendants further allege that plaintiff misled defendants regarding its intent to restructure the loan and therefore caused the loss of the leases. Defendants posit that plaintiff was motivated to mislead them by a desire to gain ownership of the property and that plaintiff has engaged in similar conduct with respect to other properties for which it was the lender.

On November 8, 1995, plaintiff filed a verified complaint against defendants seeking a judgment of foreclosure and other relief, including a judicial sale of the property. Plaintiff's complaint alleged that the loan was in default and that as of October 31, 1995, outstanding principal, accrued interest, and late charges on the loan totaled $33,778,040.15. Defendants responded with a verified answer and affirmative defenses. Plaintiff then moved for summary judgment. After a hearing on the matter, the trial court entered an order that treated plaintiff's motion for summary judgment as a motion to strike defendants' affirmative defenses on the ground that they were insufficient at law. The order then granted the motion to strike but allowed defendants to amend and refile their answer and affirmative defenses.

On July 11, 1996, defendants filed an amended answer, affirmative defenses, and counterclaims. The affirmative defenses were based on theories of breach of fiduciary duty, breach of contract, unclean hands, fraud, constructive fraud, and estoppel. The counterclaims alleged breach of fiduciary duty, breach of contract, fraud, constructive fraud, and estoppel.

Plaintiff subsequently renewed its motion for summary judgment. In support of its motion for summary judgment, plaintiff argued that the Act barred each of defendants' affirmative defenses.

On November 1, 1996, the trial court entered an order granting plaintiff's renewed motion for summary judgment as to defendants' affirmative defenses. On November 12, 1996, plaintiff moved for summary judgment on defendants' counterclaims. Plaintiff argued that the counterclaims were substantively identical to the affirmative defenses and that the Act barred the counterclaims for the same reasons that it barred the affirmative defenses.

On December 2, 1996, the trial court entered a judgment of foreclosure and sale ordering the judicial sale of the property. On December 6, 1996, defendants filed a notice of appeal from the judgment of foreclosure and sale. The appeal was to this court and was docketed as No. 2—96—1423.

On April 10, 1997, the trial court entered an order granting

plaintiff's motion for summary judgment as to defendants' counterclaims. Defendants subsequently appealed from that order. We consolidated the appeal from the April 10 order with defendants' first appeal under docket No. 2—96—1423.

Defendants subsequently filed two additional related appeals in the Appellate Court, Third District. One of these appeals, the third appeal, was from an agreed order confirming the sale of the property. The fourth appeal was from an amended confirmation order. The third and fourth appeals were later transferred to this court. We consolidated the third and fourth appeals with the first and second appeals. The parties have not filed additional briefs regarding the third and fourth appeals. Thus, on appeal, the parties only really dispute whether the trial court erred when it granted summary judgment in favor of plaintiff on the ground that the Act barred defendants' affirmative defenses and counterclaims.

After the consolidation of the four appeals in this court, plaintiff moved to dismiss the first, third, and fourth appeals (all the appeals except the appeal from the summary judgment order regarding defendants' counterclaims). Defendants objected and the motion was taken with the case.

We now address the motion to dismiss the first, third, and fourth appeals. Plaintiff contends that the appeals should be dismissed because they are moot. Plaintiff bases its contention on Supreme Court Rule 305(j) (155 Ill. 2d R. 305(j)) and cases decided under Rule 305(j). Plaintiff maintains that these authorities support the proposition that an appeal is moot when a disinterested third party purchases property that is the subject of the appeal and a stay of the underlying judgment has not been perfected. Plaintiff argues that the appeals in question here are moot because a disinterested third party has purchased the property and a stay has not been perfected.

Defendants respond by noting that they have challenged the constitutionality of the application of the Act to bar their affirmative defenses. Defendants contend that if they prevail on their constitutional challenges, then the Act, as applied, would be deemed void *ab initio* and they would be entitled to reclaim the property. Defendants argue that plaintiff's reliance on Rule 305(j) to extinguish their right to an appeal hearing regarding their constitutional challenges would be a denial of due process.

We agree with defendants. We recognize that, in general, courts avoid determining whether a statute is unconstitutional if a case can be decided on other grounds. See, *e.g.*, *First National Bank v. Kusper*, 98 Ill. 2d 226, 236 (1983). We also recognize that Rule 305(j) and re-

lated cases arguably render defendants' appeal moot and therefore would make it unnecessary for us to reach defendants' constitutional arguments.

However, a determination that Rule 305(j) renders the appeals in question moot also prevents the resolution of defendants' constitutional arguments. This is despite the fact that if defendants are correct as to their constitutional arguments, Rule 305(j) would then operate to improperly deprive defendants of their property. In view of this possible deprivation of a fundamental right, we conclude that, under the circumstances of this case, Rule 305(j) does not render the appeals moot. See *Boddie v. Connecticut*, 401 U.S. 371, 379, 28 L. Ed. 2d 113, 120, 91 S. Ct. 780, 787 (1971) (generally valid statute may be unconstitutionally invalid to extent it operates to deprive protected rights). Accordingly, plaintiff's motion to dismiss the appeals in question is denied.

We now turn to the merits of the appeals. The central issue in these appeals is whether the trial court erred when it ruled that the Act barred defendants' affirmative defenses and counterclaims and granted summary judgment on that basis to plaintiff.

■ We initially note that interpreting or construing a statute is a matter of law for the court and therefore is appropriate for summary judgment. *Matsuda v. Cook County Employees' & Officers' Annuity & Benefit Fund*, 178 Ill. 2d 360, 364 (1997). Our review of a grant of summary judgment is *de novo*. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 514 (1997).

■ Our analysis of whether the Act barred defendants' affirmative defenses and counterclaims begins with a careful reading of the statute. The Act defines a "credit agreement" as:

"an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards." 815 ILCS 160/1(1) (West 1996).

Section 2 of the Act mandates that in order for a credit agreement to be effective, the credit agreement must be in writing and must be signed by the parties. Section 2 provides:

"A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." 815 ILCS 160/2 (West 1996).

Section 3 of the Act is captioned "Actions not considered agreements." Section 3 provides, in relevant part:

"The following actions do not give rise to a claim, counter-claim, or defense by a debtor that a new credit agreement is created, unless the agreement satisfies the requirements of Section 2:

\* \* \*

(3) the agreement by a creditor to modify or amend an existing credit agreement or to otherwise take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies in connection with an existing credit agreement, or rescheduling or extending installments due under an existing credit agreement." 815 ILCS 160/3 (West 1996).

Defendants first contend that the plain words of the Act show that it did not bar their affirmative defenses and counterclaims. Defendants acknowledge that section 2 of the Act bars "an action on or in any way related to" an oral credit agreement. 815 ILCS 160/2 (West 1996). However, defendants argue that section 2 does not bar their affirmative defenses and counterclaims because affirmative defenses and counterclaims are not "actions."

In defendants' view, to the extent that the Act governs affirmative defenses and counterclaims, it does so in section 3. However, defendants read section 3 to bar only affirmative defenses and counterclaims based on the creation of a new oral credit agreement. Defendants argue that section 3 did not bar their affirmative defenses and counterclaims because they were not based on a new credit agreement. Rather, defendants maintain that their affirmative defenses and counterclaims were based on plaintiff's breach of the terms of the loan (the written credit agreement).

Although relatively few Illinois cases have construed the Act, those that have done so have uniformly held that the language of the Act is broad and was intended to extend beyond the existing Frauds Act (740 ILCS 80/0.01 *et seq.* (West 1996)) to bar traditional defenses or exceptions to the Frauds Act such as equitable estoppel. See, *e.g.*, *McAloon v. Northwest Bancorp, Inc.*, 274 Ill. App. 3d 758, 764-65 (1995), *First National Bank v. McBride Chevrolet, Inc.*, 267 Ill. App. 3d 367 (1994) (*McBride*) (Act bars all actions based on an oral credit agreement).

However, defendants contend that the Illinois cases that have construed the Act are not controlling here because they have generally not addressed fact patterns similar to the fact pattern in this case. Defendants assert that the Illinois cases have generally addressed fact patterns in which a borrower sues a lender. Defendants argue that where, as here, a lender sues a borrower and the borrower responds with counterclaims and affirmative defenses the Illinois cases simply are not applicable.

Defendants cite and urge us to follow several foreign cases. See, e.g., *Resolution Trust Corp. v. Flanagan*, 821 F. Supp. 572 (D. Minn. 1993) (credit agreement may be taken outside credit agreement act by promissory estoppel); *Norwest Bank Minnesota, N.A. v. Midwestern Machinery Co.*, 481 N.W.2d 875 (Minn. App. 1992). Defendants maintain that these cases construe statutes similar to the Act in fact patterns similar to the fact pattern in this case and conclude that borrowers may properly assert counterclaims and affirmative defenses based on oral credit agreements, notwithstanding the statutes in question.

Defendants ignore several federal cases that have construed the Act with respect to fact patterns similar to the fact pattern in this case. For example, in *Whirlpool Financial Corp. v. Sevaux*, 96 F.3d 216 (7th Cir. 1996), a lender sued a borrower on a promissory note and the borrower raised affirmative defenses and counterclaims. The affirmative defenses and counterclaims were predicated on oral promises and assurances that the lender would invest money in the borrower's financially troubled corporation and that the investment would extinguish the note. The seventh circuit affirmed the district court's summary judgment order in favor of the lender based on a ruling that the Act barred the affirmative defenses and counterclaims.

In *Whirlpool*, the borrower's affirmative defenses and counterclaims were based on theories of fraud, estoppel, breach of fiduciary duty, and breach of contract. *Whirlpool*, 96 F.3d at 220. The borrower asserted that the Act applied only to "actions" and therefore did not apply to his affirmative defenses and counterclaims because they were not "actions" as used in the Act. *Whirlpool*, 96 F.3d at 225. The court held that the borrower's counterclaims were "actions" and that section 2 of the Act barred them because they were based on an alleged oral agreement. *Whirlpool*, 96 F.3d at 225. The court next determined that the borrower's affirmative defenses were based on the same oral agreement and that section 3 of the Act therefore barred the affirmative defenses. *Whirlpool*, 96 F.3d at 226. The court cited with approval *McBride* and other Illinois cases. *Whirlpool*, 96 F.3d at 225-26.

In *Westinghouse Electric Corp. v. McLean*, 938 F. Supp. 487 (N.D. Ill. 1996), a lender sued guarantors of notes that were in default. The guarantors raised counterclaims and affirmative defenses based on theories of fraud and breach of a duty of good faith and fair dealing. The court granted the lender's motion for summary judgment based primarily on a determination that the Act barred the counterclaims and affirmative defenses. With respect to the good-faith claim, the court also determined that the lender did not exercise bad faith.

*Westinghouse Electric Corp.*, 938 F. Supp. at 493-94. As to the applicability of the Act, the court cited *McBride* for the proposition that the "Act bars all claims, whether sounding in contract or tort." *McBride*, 267 Ill. App. 3d at 372.

In *General Electric Capital Corp. v. Donogh Homes, Inc.*, No. 93 C 5614 (N.D. Ill. December 15, 1993) (mem. op.), the federal court construed the Act in a case brought by a lender against guarantors of defaulted loans. The guarantors raised counterclaims and affirmative defenses based on various theories that included promissory estoppel, misrepresentation, and breach of a contractual duty of good faith and fair dealing. The guarantors asserted that their claims arose out of the written loans rather than the lender's alleged oral agreement to extend and modify the loans. The court granted the lender's motions to dismiss the counterclaims and strike the affirmative defenses after finding that the guarantors' arguments were based on the oral agreement and not the written agreements. *General Electric Capital Corp.*, mem. op. at 7.

We believe these federal cases correctly construe the Act and correctly apply the Act to fact patterns similar to the fact pattern in this case. Consequently, we will follow these cases and will not follow the foreign cases cited by defendants.

■ In these cases, one of the critical determinations in deciding whether the Act barred counterclaims and affirmative defenses was a determination of whether the counterclaims and affirmative defenses in question were based on an oral credit agreement. In this case, defendants strenuously argue that their counterclaims and affirmative defenses are not based on an oral credit agreement. However, a careful reading of defendants' counterclaims and affirmative defenses shows that they are all based on an alleged oral agreement by plaintiff to restructure the loan.

Defendants do not contend that the written credit agreement required plaintiff to restructure the loan. Rather, all of defendants' counterclaims and affirmative defenses are based on plaintiff's alleged conduct in reneging on its alleged agreement to restructure the loan. This conduct plainly amounts to a purported agreement by plaintiff to "modify or amend" the loan and therefore falls within section 3 of the Act. 815 ILCS 160/3 (West 1996). Because the purported credit agreement to modify or amend the loans is not written and signed by the parties, section 3 bars any counterclaims or defenses based on it. Accordingly, the trial court did not err when it ruled that the Act barred defendants' affirmative defenses and counterclaims.

Defendants argue at length that plaintiff breached a fiduciary duty owed to defendants. Defendants contend that the fiduciary duty

arose from the written credit agreement and that the Act therefore did not bar their affirmative defense or counterclaim that asserted breach of fiduciary duty.

■ A mortgagor-mortgagee relationship does not create a fiduciary relationship as a matter of law. *Northern Trust Co. v. Halas*, 257 Ill. App. 3d 565, 572 (1993). Where the alleged fiduciary relationship does not exist as a matter of law, the party claiming that a fiduciary relationship exists must plead facts from which a fiduciary relationship arises. *Santa Claus Industries, Inc. v. First National Bank*, 216 Ill. App. 3d 231, 238 (1991).

■ Defendants' allegations do not support the existence of a fiduciary relationship based on the written credit agreement. The factors that defendants cite in their pleadings simply do not show that the parties' relationship went beyond the typical lender-borrower relationship. The normal trust between contracting parties does not operate to turn a formal, contractual relationship into a fiduciary relationship unless one of the parties places great trust in and relies heavily on the judgment of the other party. *Carey Electric Contracting, Inc. v. First National Bank*, 74 Ill. App. 3d 233, 238 (1979). Defendants have not pointed to anything in the written credit agreement that would support a finding that defendants placed great trust in and relied on plaintiff as to any of the terms in the written credit agreement.

On this record, defendants have not pleaded a sufficient factual basis to support the existence of a fiduciary relationship between the parties based on the written credit agreement. Therefore, defendants' argument that plaintiff breached a fiduciary duty arising from such a relationship is without merit.

Defendants next contend that, under the circumstances of this case, the trial court's application of the Act was unconstitutional. In their appeal brief, defendants argue that such an application "(1) abrogates common law rights and remedies which were in existence at the time the contract was formed; (2) impairs defendants' contractual rights, including the right to enforce [plaintiff's] implied covenant of good faith and fair dealing; (3) constitutes special legislation; (4) effects a denial of equal protection; and (5) violates the constitutional proscription against dual purpose legislation."

■ Familiar standards guide us in examining the constitutionality of a statute. A legislative enactment enjoys a heavy presumption of constitutionality, and the challenging party has the burden of establishing a statute's invalidity. *In re Marriage of Lappe*, 176 Ill. 2d 414, 422 (1997). We must resolve all reasonable doubts in favor of upholding the validity of the statute. *People v. Davis*, 177 Ill. 2d 495, 501 (1997).

■ This court previously addressed constitutional challenges to the Act in *Nordstrom v. Wauconda National Bank*, 282 Ill. App. 3d 142 (1996). In that case, the plaintiff borrowers contended that applying the Act to bar a promissory estoppel count of the complaint they brought against a lender was unconstitutional because it violated their equal protection and due process rights and constituted special legislation. We determined that applying the Act to bar the promissory estoppel count was not a violation of the plaintiffs' equal protection rights and did not constitute special legislation because the Act was rationally related to its purpose of protecting not only the special interests of lending institutions but also the depositors of such institutions. *Nordstrom*, 282 Ill. App. 3d at 146.

Here, defendants contend that the reasoning in *Nordstrom* does not apply to the situation presented in this case where a borrower seeks to assert defenses against a lender's foreclosure action involving alleged fraudulent or inequitable conduct by the lender. Plaintiff responds that the reasoning in *Nordstrom* does apply in this case because allowing affirmative defenses based on an alleged oral credit agreement could prevent lenders from collecting otherwise valid loans and severely impact both lending institutions and their depositors.

We agree with plaintiff that applying the Act to bar defenses based on an alleged oral credit agreement in this case would serve the same purposes delineated in *Nordstrom*. Therefore, applying the Act to bar defendants' defenses in this case was not a violation of defendants' equal protection rights and was not unconstitutional special legislation for the reasons given in *Nordstrom*. Accordingly, we need not further address defendants' contentions that the trial court's ruling violated defendants' equal protection rights or amounted to unconstitutional special legislation.

We next address defendants' contention that the trial court ruling unconstitutionally abrogated common-law rights and remedies in existence at the time the contract was formed. More specifically, defendants assert that the trial court ruling left them without a remedy in violation of the "certain remedy" provision in article I, section 12, of the Illinois Constitution.

Article I, section 12, of the Illinois Constitution provides:

> "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. I, § 12.

■ Our supreme court has repeatedly stated that the "certain remedy" provision is merely an expression of philosophy and does not mandate that a certain remedy be provided in any form for any al-

leged wrong. See, *e.g.*, *McAlister v. Schick*, 147 Ill. 2d 84, 98 (1992). Moreover, the legislature has the inherent power to repeal or change the common law and may do away with all or part of it. *People v. Gersch*, 135 Ill. 2d 384, 395 (1990). The legislature also has broad discretion to determine whether a statute that restricts or alters an existing remedy is reasonably necessary to promote the general welfare. *Bilyk v. Chicago Transit Authority*, 125 Ill. 2d 230, 245 (1988).

Based on these principles, we conclude that the Act is well within the legislature's powers. Accordingly, defendants' "certain remedy" argument fails.

■ Defendants also contend that applying the Act as the trial court did in this case was an *ex post facto* violation because the written credit agreement predated the Act. However, the Act was plainly in force at the time the purported oral credit agreement was formed. Because the alleged misconduct is based on the purported oral credit agreement, the Act plainly applied. It is presumed that parties contract with knowledge of the existing law. *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217 (1997). For these reasons, defendants' *ex post facto* argument fails.

■ Defendants next contend that applying the Act to bar their defenses unconstitutionally impaired existing contractual obligations arising from the written credit agreement by denying their right to enforce plaintiff's duty of good faith and fair dealing. Defendants do not specify the exact conduct that allegedly amounted to a breach by plaintiff of its duty of good faith and fair dealing. Based on their general arguments, defendants presumably contend that plaintiff breached its duty of good faith and fair dealing by abusing its discretion to approve leases under the written credit agreement.

As a matter of law in Illinois, a duty of good faith and fair dealing is implied in every contract. *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 315 (1996). The duty requires a party vested with contractual discretion to exercise that discretion reasonably and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367 (1995).

Under these principles, defendants might have a valid argument if the only conduct they complained of was plaintiff's alleged abuse of discretion in approving leases. However, plaintiff's alleged conduct regarding leases is inextricably linked to plaintiff's alleged conduct in reneging on its oral agreement to restructure the loan. It is undisputed that the written credit agreement did not require plaintiff

to restructure the loan. Nonetheless, defendants state that the loss of leases resulted from plaintiff's refusal to go forward with the restructuring after plaintiff orally promised not to backtrack from a proposed restructuring plan.

Because defendants' own description of the alleged breach of a duty of good faith and fair dealing shows that it is really based on the purported oral credit agreement to restructure the loans, we conclude that defendants are attempting to bootstrap the alleged breach of a duty of good faith and fair dealing stemming from the written credit agreement into an alleged breach of a duty of good faith and fair dealing arising from the purported oral credit agreement. We decline to extend the implied duty of good faith and fair dealing to the extent urged by defendants. Accordingly, defendants' argument that plaintiff breached a duty of good faith and fair dealing fails.

Finally, defendants contend that the trial court's ruling violated the constitutional proscription against dual purpose legislation that is usually referred to as the single subject rule. The single subject rule is stated in article IV, section 8(d), of the Illinois Constitution of 1970, which provides, in relevant part:

> "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8(d).

In defendants' view, the trial court ruling violated the single subject rule because it interpreted the Act not only as a means of protecting lenders against spurious lender liability complaints based on oral credit agreements but also as a vehicle that lenders could use to strip borrowers of defenses that would otherwise be available to them in actions against them on a written credit agreement. Defendants argue that because the latter purpose bears no rational relationship to the former purpose, the Act as applied by the trial court violates the single subject rule.

██ Our supreme court recently set out the principles that guide us in reviewing legislation to determine whether it violates the single subject rule. The court stated:

> "The term 'subject,' in this context, is to be liberally construed and the subject may be as broad as the legislature chooses. [Citations.] Nonetheless, the matters included in the enactment must have a natural and logical connection. [Citations.] The rule prohibits the inclusion of ' "discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other." ' [Citations.]

As the above principles elucidate, the single subject rule does

not impose an onerous restriction on the legislature's actions. Rather, the rule leaves the legislature with wide latitude in determining the content of bills." *Johnson v. Edgar*, 176 Ill. 2d 499, 515 (1997).

Under these principles, the Act as applied to this case clearly satisfies the single subject rule. Even if we accepted, for the sake of argument, defendants' characterization of the two "purposes" of the Act, it is obvious that the single subject of the Act is a writing requirement for credit agreements. Accordingly, defendants' argument that the trial court's application of the Act violated the single subject rule is unpersuasive.

In sum, we conclude that the trial court did not err when it granted summary judgment in favor of plaintiff on the ground that the Act barred defendants' counterclaims and affirmative defenses. In addition, defendants did not carry their burden of showing that the trial court's application of the Act was unconstitutional.

Based on the foregoing, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and COLWELL, JJ., concur.