BANK ONE, SPRINGFIELD, Plaintiff-Appellant, v. WILLIAM J. ROSCETTI, Defendant-Appellee.

Fourth District   No. 4—99—0254

Argued October 13, 1999.—Opinion filed December 20, 1999.—Rehearing denied February 18, 2000.

Barry O. Hines (argued) and R. Kurt Wilke, both of Barber, Segatto, Hoffee & Hines, of Springfield, for appellant.

Charles H. Delano III (argued) and Patrick James Smith, both of Delano Law Offices, P.C., of Springfield, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Plaintiff, Bank One, Springfield (Bank One), filed a complaint against William Roscetti (Roscetti) seeking to enforce a guaranty (guaranty) Roscetti executed to secure Bank One's extension of credit to Illini Motorama (Illini). Roscetti responded with five affirmative defenses and one counterclaim. Bank One filed a motion seeking summary judgment in its favor on Roscetti's counterclaim and dismissal of Roscetti's affirmative defenses, arguing they were barred by the Credit Agreements Act (Act) (815 ILCS 160/1 *et seq.* (West 1998)). Roscetti responded with a cross-motion for summary judgment, alleging that the Act did not bar his defenses and counterclaim and arguing that Bank One had breached the implied covenant of good faith and fair dealing. The trial court found that (1) guaranties are not credit agreements for purposes of the Act; (2) even if the Act applied, good faith and fair dealing are implied in all contracts; and (3) Bank One breached its duty of good faith and fair dealing. The trial court entered judgment for Roscetti. On appeal, Bank One argues that the trial court erred in (1) ruling that guaranties are not credit agreements and that the Act did not apply, (2) ruling that Bank One breached the duty of good faith, (3) granting summary judgment because unresolved issues of material fact exist, and (4) granting Roscetti leave to file a fifth affirmative defense and ruling on the defense on the same day. We reverse and remand with instructions.

## I. BACKGROUND

In 1987, Bank One extended a revolving floor-plan line of credit of $300,000 (loan) to Illini, evidenced by a promissory note (note) and floor plan (floor plan) executed by Illini in favor of Bank One. Under the floor-plan line of credit, Illini was to purchase vehicles with funds loaned by Bank One, pay interest on the line of credit, and upon the sale of a vehicle repay Bank One for the portion of the loan allocated to such vehicle. Ellis "Mike" Robinson (Robinson), an account manager at Bank One, informed Larry Dellomo (Dellomo), the principal of Illini, that Bank One required a personal guaranty as a condition to the loan. To satisfy this requirement, Roscetti, a long-time friend of Dellomo's, executed and delivered a guaranty to Bank One unconditionally guaranteeing payment of the loan. The guaranty was renewed on a yearly basis.

In 1991, Illini became out-of-trust under the floor plan by about $60,000. Shortly thereafter, Robinson, Roscetti, and Dellomo met to discuss the default. The parties agreed that Bank One would loan

Roscetti $60,000, Roscetti would loan the $60,000 to Illini, and Illini would pay Bank One and bring itself back into trust. In exchange, Robinson agreed to allow Illini to continue the existing floor-plan line of credit. Roscetti alleges that Robinson encouraged him to agree to this scheme by promising that he would watch Illini and Dellomo "like a hawk" and would inform Roscetti immediately of any problems. Roscetti further alleges that, over the next few years, he periodically inquired of Robinson about the status of Illini and was told that everything was "A-OK."

In the summer of 1995, Bank One requested that Illini and Roscetti execute new financing documents. On October 2, 1995, Illini executed a new floor plan and note in the principal amount of $300,000, set to expire on December 31, 1995. On October 2, 1995, Roscetti executed a new guaranty, unconditionally guaranteeing the loan. Although the guaranty was unlimited in nature, Roscetti alleges that this was the result of a mutual mistake of fact and that he and Bank One intended the guaranty to be limited to $300,000.

Illini maintained a checking account at Elliot State Bank (Elliot). John Wilcox (Wilcox), an employee of Elliot, became aware of a pattern of overdrafts in Illini's account in September 1995. Wilcox allegedly discussed the pattern of overdrafts with Robinson. Roscetti alleges that the pattern of overdrafts was evidence that Illini was operating a check-kiting scheme and that Wilcox may have used the term "check-kiting" in his discussions with Robinson.

The floor plan and note matured on December 31, 1995, but Bank One did not call the note or renew the floor plan or note. However, it continued to advance funds to Illini from January 1, 1996, to April 16, 1996. Roscetti alleges that Bank One advanced over $6 million to Illini during this four-month period. In April 1996, Dellomo presented checks to Bank One in the amount of $389,930 and received additional funds. At this point, Illini's principal balance was $263,250. The deposited checks bounced, however, leaving a principal balance of $653,180. As a result, Illini was in default and Dellomo disappeared.

Bank One filed a complaint against Roscetti on September 25, 1996, seeking to enforce the guaranty in the amount of Illini's principal balance, which had by then been reduced to $547,659.08 due to additional vehicles on Illini's lot being sold. As of March 26, 1997, the principal balance was further reduced to $408,285.80 due to additional vehicles being sold.

On February 13, 1997, Roscetti filed an answer, four affirmative defenses, a counterclaim, and a third-party complaint alleging various counts against Bank One, Elliot, Illini, and Dellomo. The third-party complaint was ultimately dismissed. Roscetti's four affirmative defen-

ses alleged that Bank One (1) failed to properly inspect and monitor the floor plan and falsely advised Roscetti the floor plan was in order; (2) failed to inform Roscetti it had extended the floor plan and promissory note and thereby increased Roscetti's risk; (3) failed to inform Roscetti it had discussed the alleged check-kiting scheme with Elliot and thereby increased Roscetti's risk; and (4) breached the implied covenant of good faith and fair dealing by failing to vigilantly monitor Illini and by not requiring full performance by Illini under the floor plan. Roscetti's counterclaim alleged that Bank One breached its contract with Roscetti that it would keep Roscetti informed of Illini's operations and would watch Illini and Dellomo "like a hawk."

On March 12, 1998, Bank One filed a motion seeking summary judgment on Roscetti's counterclaim and dismissal of his defenses. Bank One argued that the Act barred "any action on an oral agreement related to the extension of credit." Because Roscetti's counterclaim and defenses rested on Robinson's alleged agreement to monitor vigilantly Illini's operation, which agreement was not reduced to writing, the counterclaim and defenses were barred.

On April 9, 1998, Roscetti filed a cross-motion for summary judgment, responding that his counterclaim and defenses were based on Bank One's failure to perform obligations imposed on it by the express terms of the guaranty, floor plan, and note, and were not predicated upon Robinson's statement. Roscetti also argued that Bank One had breached the implied covenant of good faith and fair dealing by acting inconsistently with Roscetti's rights and failing to disclose circumstances that materially increased Roscetti's risks.

Roscetti also filed a motion seeking leave to file a fifth affirmative defense on the same day. Before actually obtaining leave, Roscetti filed his fifth affirmative defense on April 14, 1998, alleging that Bank One had failed to diligently pursue timely compliance by Illini with the terms of the floor plan and note, failed to diligently notify Roscetti that Illini was in default, and materially modified Roscetti's obligations.

On December 2, 1998, Judge Myerscough issued a memorandum opinion granting Roscetti's motion for leave to file his fifth affirmative defense, denying Bank One's motion for summary judgment on Roscetti's counterclaim and motion to strike his defenses, and entering judgment in favor of Roscetti and against Bank One's complaint and Roscetti's counterclaim. Judge Eggers denied the motion for reconsideration. This appeal followed.

## II. ANALYSIS

■ Summary judgment is appropriate where the pleadings, af-

fidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. This court reviews the entry of summary judgment *de novo. Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333, 662 N.E.2d 397, 402 (1996). It considers anew the facts and law related to the case to determine whether the trial court was correct. *Shull v. Harristown Township*, 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167 (1992).

### A. Roscetti's Affirmative Defenses and Counterclaims

∎ The trial court's memorandum opinion states that "a guaranty is not a credit agreement under the [Act]" and, accordingly, holds the Act inapplicable. Bank One contends that the trial court's holding defies controlling case law. We agree that the trial court incorrectly held that the Act is inapplicable to Roscetti's defenses and counterclaim.

The Act defines a "credit agreement" as:

"an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family[,] or household purposes, and not in connection with the issuance of credit cards." 815 ILCS 160/1(1) (West 1998).

Section 2 of the Act provides:

"A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." 815 ILCS 160/2 (West 1998).

Section 3 of the Act provides in relevant part:

"The following actions do not give rise to a claim, counter[ ]claim, or defense by a debtor that a new credit agreement is created, unless the agreement satisfies the requirements of [s]ection 2:

\* \* \*

(3) the agreement by a creditor to modify or amend an existing credit agreement or to otherwise take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies in connection with an existing credit agreement, or rescheduling or extending installments due under an existing credit agreement." 815 ILCS 160/3(3) (West 1998).

To date, six Illinois cases have construed the Act. In *First National Bank v. McBride Chevrolet, Inc.*, 267 Ill. App. 3d 367, 642 N.E.2d 138 (1994), a lender foreclosed upon certain mortgages and guaranties. The defendants raised various affirmative defenses and counterclaims,

all predicated upon an oral promise by the bank's officer to hold an overdraft check until sufficient funds could be deposited. This court construed the oral promise to hold the check to be a "credit agreement" under the Act. *First National Bank*, 267 Ill. App. 3d at 372, 642 N.E.2d at 141. This court held that the Act is broadly worded and that "[t]here is no limitation as to the type of actions by a debtor which are barred by the Act, so long as the action is in any way related to a credit agreement." *First National Bank*, 267 Ill. App. 3d at 372, 642 N.E.2d at 142. Further, "all actions which depend for their existence upon an oral credit agreement are barred by the Act," including actions traditionally excepted by the Frauds Act (Frauds Act) (740 ILCS 80/1 *et seq.* (West 1992)). *First National Bank*, 267 Ill. App. 3d at 372, 642 N.E.2d at 142. Because the bank officer's promise was not in writing, all of defendants' defenses and claims based on this oral promise were barred under section 2 of the Act. The court recognized that "[t]his type of agreement may be at the extreme of what the legislature intended to cover, but it is within the coverage of the Act." *First National Bank*, 267 Ill. App. 3d at 373, 642 N.E.2d at 142.

In *McAloon v. Northwest Bancorp, Inc.*, 274 Ill. App. 3d 758, 763, 654 N.E.2d 1091, 1094 (1995), the second district stated that the Act was a "strong form" of the Frauds Act and concluded that the Act barred even traditional exceptions to the Frauds Act, such as equitable estoppel (*McAloon*, 274 Ill. App. 3d at 765, 654 N.E.2d at 1095). In *Klem v. First National Bank*, 275 Ill. App. 3d 64, 67-68, 655 N.E.2d 1211, 1213 (1995), quoting, in part, section 2 of the Act (815 ILCS 160/2 (West 1994)), the second district agreed with the analysis in *First National Bank* and held that "[t]he broad language of the Act [citations] bars—without express exception—actions 'on or in any way related to' unwritten credit agreements," including the long-recognized common-law exceptions to the Frauds Act.

In *Nordstrom v. Wauconda National Bank*, 282 Ill. App. 3d 142, 668 N.E.2d 586 (1996), after equipment that was being used as collateral for its loan was destroyed by fire, a borrower brought an action against its bank based on an alleged oral promise by the bank's officer that the bank would procure insurance for the equipment. The borrower argued that its claims were not barred by the Act because the bank's agreement to procure insurance was not based on an oral agreement, but was in conformance with a certain written agreement to provide insurance. The agreement to provide insurance provided that if the borrower failed to procure insurance, the bank "may" do so at the borrower's expense. *Nordstrom*, 282 Ill. App. 3d at 144-45, 668 N.E.2d at 587-88. The second district ruled that because the agreement to provide insurance did not obligate the bank to procure insur-

ance, but only gave it the discretion to do so, the bank's oral promise to procure insurance was an oral modification of the contractual agreement, obligating the borrower to procure insurance. *Nordstrom*, 282 Ill. App. 3d at 145, 668 N.E.2d at 588. The court ruled further:

> "Although the modification agreement to procure insurance is not, itself, a credit agreement, the requirement of insurance for the collateral is an integral part of the credit agreement. Therefore, the agreement relates to the credit agreement and the claims predicated on it are thereby barred by [section 2 of] the Act." *Nordstrom*, 282 Ill. App. 3d at 145-46, 668 N.E.2d at 588-89.

In *Machinery Transports v. Morton Community Bank*, 293 Ill. App. 3d 207, 209-10, 687 N.E.2d 533, 535-36 (1997), the third district ruled, though reluctantly, that even claims based on oral credit agreements under which one party has fully performed are barred by the Act. The court's reluctance stemmed from its belief that strict application of the Act could lead to disastrous consequences in the hands of unscrupulous lenders.

Finally, in *Teachers Insurance & Annuity Ass'n of America v. La Salle National Bank*, 295 Ill. App. 3d 61, 65-68, 691 N.E.2d 881, 885-887 (1998), a lender foreclosed on a mortgage. The borrower raised several affirmative defenses and counterclaims predicated upon the lender's alleged agreement to restructure the loan. The borrower first contended that section 2 of the Act only bars "actions." Because defenses and counterclaims are not "actions," they are not barred under section 2. To the extent the Act does bar defenses and counterclaims, the borrower argued, it does so under section 3. However, the borrower read section 3 to bar only defenses and counterclaims based on allegations that a new credit agreement had been created. Because its defenses and counterclaims were based on the lender's breach of the terms of an existing loan, and not allegations of a new credit agreement, section 3 did not apply.

The second district, in *Teachers*, declined to follow several foreign cases cited by the borrower as construing statutes similar to the Act. These foreign cases held that a borrower may properly assert defenses and counterclaims based on oral credit agreements. *Teachers*, 295 Ill. App. 3d at 69, 691 N.E.2d at 887. The *Teachers* court elected instead to follow three federal cases construing the Act. *Teachers*, 295 Ill. App. 3d at 69-70, 691 N.E.2d at 887-88. Applying these cases, the court found that the borrower's defenses and counterclaim were based on the lender's alleged oral agreement to restructure an existing loan and were not based on any provision of the existing loan. Because the agreement to restructure was not in writing, all claims and defenses predicated upon it were barred under section 3 of the Act.

We find two of the federal cases cited by *Teachers* relevant here because they involved foreclosures of guaranties. In *Westinghouse Electric Corp. v. McLean*, 938 F. Supp. 487, 488-89 (N.D. Ill. 1996), the lender sued guarantors of defaulted notes. The guarantors raised counterclaims and affirmative defenses based on theories of fraud and economic duress. The court found that the fraud counterclaim and defense were based on an oral promise to forgive the debt and were barred. *Westinghouse*, 938 F. Supp. at 492. The court found that the economic duress counterclaim and defense were either based on breach of the oral promise to forgive debt, in which case they were barred, or breach of an alleged obligation on the lender to disburse additional funds. *Westinghouse*, 938 F. Supp. at 493. The guarantors offered two arguments that the lender was obligated to disburse funds. One argument was based on an alleged oral promise to disburse the funds. To the extent the claims and defenses rested on this oral promise, they were barred under the Act. The second argument was that the lender was obligated to disburse the funds by the covenant of good faith and fair dealing. The court found that the economic duress claim based upon good faith and fair dealing was not barred by the Act. However, the court found that the lender had not acted in bad faith. *Westinghouse*, 938 F. Supp. at 493-94.

In another federal case cited by the *Teachers* court, *General Electric Capital Corp. v. Donogh Homes, Inc.*, No. 93—C—5614 (N.D. Ill. December 15, 1993), a lender brought an action against the guarantors of defaulted loans. The guarantors raised several counterclaims and affirmative defenses that the lender argued were barred under the Act because they were based on an alleged oral agreement by the lender to extend or modify the loans. The guarantors argued that their defenses and counterclaims were based on the lender's obligations under the existing written loan agreements. The court disagreed and held that the counterclaims and defenses were all based on the lender's reneging on its oral agreement to extend or modify the loans and were barred.

In accordance with the foregoing case law, our determination of whether the Act bars Roscetti's defenses and counterclaim consists of two inquiries: (1) whether Robinson's promise constitutes one of the oral agreements governed by the Act, and (2) if it does, whether Roscetti's defenses and counterclaim are based on the oral promise.

Of the types of oral agreements discussed by the Act, we find that Robinson's alleged promise is properly characterized as an oral agreement to modify or amend an existing credit agreement. Without expanding on its reasoning, the trial court held that a guaranty is not a credit agreement. The trial court likely reasoned that Robinson's

promise was properly characterized as an oral modification to the guaranty, and, because the guaranty is not a credit agreement, Robinson's promise was not an oral agreement "to modify or amend an existing credit agreement" under section 3 (815 ILCS 160/3 (West 1998)). Thus, it did not come into the purview of the Act.

Based on the principles of *First National Bank*, *Westinghouse*, and *General Electric*, we conclude the trial court erred in considering the nature of the guaranty in isolation from the rest of the loan transaction. In each of these cases, a lender sued the guarantors of defaulted notes. The court in each case considered whether the oral promise on which the guarantor's defenses and claims were based was a modification of the entire loan transaction, not just the guaranty, despite the fact that the lender sued on the basis of the guaranty. Thus, the courts recognized that the guaranty was one of several documents constituting a credit agreement and could not be considered independently.

■ The approach in these cases makes sense. A credit agreement often consists of several documents that, together, create the terms of the extension of credit. The documents are, in many instances, conditioned upon each other, and a default under one is usually a default under all. Significantly, the Act does not limit the definition of "credit agreement" to being a single document.

■ In the instant case, the guaranty was a condition precedent to the loan, and, without it, there would have been no credit agreement at all. The guaranty, together with the note, the floor plan, and possibly other documents, constituted the comprehensive credit agreement. In fact, as Roscetti himself emphasizes in his brief, the guaranty contained an integration clause that integrated it with "any related documents." Thus, to the extent Robinson's promise modified the terms of the guaranty, it also modified the entire credit agreement. Isolating the guaranty, as the trial court did, limits the application of the Act, contrary to this court's holding in *First National Bank*, 267 Ill. App. 3d at 372-73, 642 N.E.2d at 142, and the holdings of the second district in *McAloon*, *Klem*, *Nordstrom*, and *Teachers* and the third district in *Machinery Transports*, that the Act is to be broadly construed.

The instant case is also similar to *Nordstrom*. In *Nordstrom*, 282 Ill. App. 3d at 145-46, 668 N.E.2d at 588-89, the court found that the agreement to procure insurance that was modified by the lender's alleged promise was an integral part of the credit agreement. Thus, claims predicated on the oral modification of the agreement were barred. Similarly, the guaranty was an integral part of the credit agreement between Illini and Bank One, and claims based on oral modifications of the guaranty are barred under the Act.

Based on this analysis, we conclude that Robinson's promise is as an oral agreement to "modify or amend an existing credit agreement" under section 3 of the Act (815 ILCS 160/3 (West 1998)) and, contrary to the trial court's holding, the Act is applicable.

We further conclude that Roscetti's defenses and counterclaim are all predicated upon Robinson's oral agreement to monitor Illini and Dellomo "like a hawk" and are, thus, barred under the Act. We disagree with Roscetti that his defenses and counterclaim are based on obligations imposed upon Bank One by the terms of the guaranty, floor plan, and note themselves. Upon our reading, none of these documents obligate Bank One to monitor Illini or Dellomo or to otherwise notify Roscetti of any facts in connection with the loan.

### B. Duty of Good Faith and Fair Dealing

The trial court held that, even if the Act is applicable, Bank One breached its duty of good faith and fair dealing. Bank One does not dispute the existence of a duty to act in good faith, but contends that the covenant of good faith cannot override the express terms of the guaranty. Bank One argues that it was entitled to do everything it did under the express terms.

Roscetti argues that Bank One breached its duty of good faith by (1) failing to renew the floor plan or note; (2) failing to inform Roscetti that the floor plan and note had expired and were not renewed; (3) advancing funds to Illini after the maturity date of the note of December 31, 1995; (4) materially modifying Roscetti's obligations and risks by (a) not calling the note when due and failing to advise Roscetti of the same; (b) advancing funds to Illini past December 31, 1995, and failing to advise Roscetti of the same; (c) allowing substantial numbers of vehicles to be missing from the floor plan and advancing funds without sufficient security; (d) advancing funds in excess of $300,000; (e) advancing funds after knowledge of Illini's check-kiting scheme and allowing Illini to continue the scheme; and (f) allowing Illini to maintain a depository account at a bank other than Bank One in contravention of the terms of the floor plan; (5) failing to inform Roscetti of Illini's alleged check-kiting scheme; and (6) misrepresenting Illini's financial condition to Roscetti on several occasions and falsely informing Roscetti that it was monitoring Illini and Dellomo.

█ █ Every contract implies good faith and fair dealing between the parties to it. *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 286, 154 N.E.2d 683, 690 (1958). Accordingly, a bank has a duty of good faith in dealing with a guarantor. *City National Bank v. Russell*, 246 Ill. App. 3d 302, 310, 615 N.E.2d 1308, 1313 (1993). Good faith requires the party vested with contractual discretion to exercise

it reasonably, and he may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties. *Carrico v. Delp*, 141 Ill. App. 3d 684, 690, 490 N.E.2d 972, 976 (1986); see also *Chemical Bank v. Paul*, 244 Ill. App. 3d 772, 783, 614 N.E.2d 436, 442 (1993) (creditor had considerable discretion in use and application of disbursed funds and did not exercise the discretion reasonably); *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 368, 657 N.E.2d 1095, 1104-05 (1995) (guarantor failed to allege facts showing bank had contractual discretion). A creditor has a good-faith obligation to inform the guarantor of facts known to the creditor that materially increase the guarantor's risk beyond that which the creditor has reason to believe the guarantor intended to assume, and which the creditor may reasonably believe are unknown to the guarantor. A material change that increases a guarantor's liability, without his consent, may discharge his obligations. *McLean County Bank v. Brokaw*, 119 Ill. 2d 405, 416-17, 519 N.E.2d 453, 458 (1988).

■ Despite the foregoing good-faith principles, parties to a contract are entitled to enforce its terms to the letter, and an implied covenant of good faith cannot overrule or modify the express terms of a contract. *Northern Trust*, 276 Ill. App. 3d at 367, 657 N.E.2d at 1104. The covenant of good faith and fair dealing does not enable a guarantor to read an obligation into a contract that does not exist. *Northern Trust*, 276 Ill. App. 3d at 368, 657 N.E.2d at 1104.

Roscetti has alleged that the unlimited nature of the guaranty was the result of a mutual mistake of fact and that the parties actually intended that it be limited to $300,000. However, this is the only element of the guaranty that Roscetti alleges was the result of the mistake. Consequently, in applying the foregoing principles, we accept the remaining provisions of the guaranty as undisputed.

■ Roscetti's first allegation is that Bank One breached the duty of good faith by failing to renew the floor plan or the note. Roscetti has not identified any provisions of the floor plan, note, or guaranty that either vested Bank One with contractual discretion to renew the floor plan or the note or obligated Bank One to renew. The good-faith duty to exercise contractual discretion reasonably is inapplicable where no contractual discretion exists. Roscetti also cannot use the covenant of good faith to read an obligation into the documents that does not exist. We fail to understand how Roscetti was harmed by Bank One's failure to renew the note or floor plan.

Roscetti's second allegation is that Bank One breached the duty of good faith by failing to inform him that the floor plan and note had expired and were not renewed. However, under the express terms of the guaranty, Roscetti waived all notices pertaining to the loan and

the guaranty. No exception was made for notice of the expiration or renewal of the floor plan and note.

Roscetti's third allegation is that Bank One breached the duty of good faith by advancing funds to Illini after the maturity date of the note. We note initially that Roscetti alleges Bank One advanced over $6 million to Illini between January 1, 1996, and April 16, 1996, and implies that this is additional evidence of a good-faith violation. However, the documents upon which Roscetti bases this allegation indicate Illini's outstanding balance rarely exceeded the $300,000 limit, and when it did, it was only by one to four percentage points. It appears that the aggregate amount of advances may have exceeded $6 million during the four-month period because Bank One advanced funds to Illini during this period almost on a daily basis. However, the record also indicates that Illini was also repaying the line of credit on a daily basis. Given that the loan was a revolving line of credit and that Illini was a car dealership and possibly had a great volume of business, the $6 million figure alone is not sufficient to raise a red flag.

Turning to the merits of Roscetti's allegation, Roscetti fails to explain how Bank One's advancement of funds to Illini beyond the note's maturity date constituted a breach of Bank One's duty to deal with Roscetti in good faith. If Bank One chose to advance additional funds to Illini, that decision was between Bank One and Illini. Any effect on Roscetti would be governed by the terms of the guaranty. The guaranty provides that it is absolute and continuing and is not affected or impaired if lender "amends, renews, extends, [or] compromises" Illini's obligations.

Roscetti relies on *First of America Bank-Illinois, N.A. v. Drum*, 295 Ill. App. 3d 205, 692 N.E.2d 703 (1998), in support of his position that Bank One committed a good-faith violation by advancing funds to Illini after the maturity date. However, *First of America Bank* is inapposite. In *First of America Bank*, Drum and Vincent cosigned a note. The lender advanced funds to Drum, who operated a used car dealership, and Vincent essentially signed the note as a guarantor. The note matured on April 1, 1995, but the lender continued to advance funds to Drum. Drum defaulted and declared bankruptcy, whereupon the lender sought recovery from Vincent. *First of America Bank*, 295 Ill. App. 3d at 207, 692 N.E.2d at 704. The court held that Vincent could not be liable for advances to Drum after the maturity date. To hold otherwise would negate clear language in the note that the term was one year. The court held that if it was the lender's intention to obligate Vincent in perpetuity, it should have included specific language in the note to that effect. *First of America Bank*, 295 Ill. App. 3d at 210, 692 N.E.2d at 706.

Unlike in *First of America Bank*, Roscetti here did not sign the note. He signed a separate guaranty, and his obligations were governed by the terms of the guaranty, not the note. The guaranty specifically provided that the term was a minimum of one year from the date of execution, October 2, 1995, and could be terminated thereafter by Roscetti. Thus, although the note matured on December 31, 1995, Roscetti's obligations continued at least until October 2, 1996. The guaranty did not tie Roscetti's obligations specifically to Illini's obligations under the note, but stated that Roscetti would be liable for all present and future indebtedness of Illini to Bank One, whether under the note or otherwise. Even assuming the parties meant to limit Roscetti's guaranty to $300,000, Roscetti was still liable under the terms of the guaranty for all indebtedness of Illini up to $300,000 until at least October 2, 1996.

Roscetti's fourth allegation is that Bank One breached the duty of good faith by materially modifying his obligations and risks. The determination of whether Bank One materially modified Roscetti's obligations and risks must begin with a discussion of the key provisions of the guaranty governing those obligations and risks. Among the key provisions of the guaranty are that (1) it is unconditional, unlimited, and applies to all present and future indebtedness of Illini; (2) it is absolute and continuing in nature and is not affected or impaired by Bank One's amendment, renewal, extension, compromise, exchange, failure to exercise, impairment, or release of any of Illini's obligations or any of Bank One's rights against Illini; (3) Roscetti's obligations thereunder are direct and unconditional; (4) Roscetti waives all notices and demands pertaining to Illini's obligations; (5) Roscetti assumes full responsibility for obtaining any additional information regarding Illini's financial condition, and Bank One is not required to furnish Roscetti with information of any kind regarding Illini's financial condition; (6) Roscetti voluntarily accepts the full range of risks associated with the guaranty, including that Illini's financial condition might deteriorate, or, if the guaranty is unlimited, the risk that Illini might incur additional obligations to Bank One in the future; and (7) the term of the guaranty is a minimum of one year, and, thereafter, Roscetti may terminate upon at least 60 days' notice to Bank One.

Given the broad nature of Roscetti's obligations and risks, as evidenced by the foregoing provisions, we find it difficult to find any merit in his argument that Bank One materially modified or increased his obligations and risks. First, none of the actions alleged to have been taken by Bank One increased his liability, because, by the express terms of the guaranty, his liability was unlimited. Even assuming a

mutual mistake of fact, as Roscetti alleges, and that his liability was limited to $300,000, nothing Bank One did would have increased Roscetti's obligations beyond $300,000. Even if Bank One advanced more than $300,000 to Illini, Roscetti's liability would have remained at $300,000. See *McLean*, 119 Ill. 2d at 413-14, 519 N.E.2d at 457 (bank's loan in excess of principal amount specified in guaranty did not materially increase guarantors' liability such that the liability would be discharged, because the amount specified in the guaranty represents the total amount for which they would be liable, regardless of the amount of credit extended to borrower).

By its terms, Roscetti agreed that his guaranty would be absolute, continuing, and unaffected by Bank One's failure to exercise its rights with respect to the collateral securing the loan or its impairment thereof. Thus, Roscetti's obligations and risks could not have been materially modified by Bank One's advancing funds when vehicles were missing from the floor plan. In addition, Roscetti took the risk that Bank One would fail to exercise its rights against Illini, and again Roscetti agreed that his guaranty would be unaffected by such failure. Thus, Bank One could not have modified his obligations or risks by advancing funds to Illini after receiving knowledge of the alleged check-kiting scheme or allowing Illini to maintain a depository account at Elliot. In sum, none of the actions that Roscetti alleges Bank One to have taken materially modified Roscetti's obligations or risks beyond those for which he contracted.

Roscetti cites *McHenry State Bank v. Y&A Trucking, Inc.*, 117 Ill. App. 3d 629, 633, 454 N.E.2d 345, 348 (1983), for the proposition that "any action taken by a creditor without the guarantor's consent which varies the terms of the principal obligation, increases the guarantor's risk[,] or deprives the guarantor of the opportunity to protect himself will result in a discharge *pro tanto* of the guarantor from his obligation." In *McHenry*, 117 Ill. App. 3d at 631, 454 N.E.2d at 347, a lender received faulty title to collateral securing the loan. The lender never informed the guarantor of the faulty title. Rather, it returned the title to the then-current owner, with whom it had no contractual relationship or expectation of cooperation, and asked that the owner correct and return the title. The lender never received the title and failed to follow up.

Here, Roscetti has presented no evidence that Bank One acted with a similar disregard. Moreover, there was no discussion in *McHenry* of a forfeiture by the guarantor of claims based on the lender's release of the collateral, perhaps because none existed. Unlike the guarantor in *McHenry*, Roscetti did specifically forfeit such claims and cannot use good-faith obligations to override the express forfeiture.

Roscetti's fifth allegation is that Bank One failed to inform him of Illini's alleged check-kiting scheme or that it had inquired of Elliot about it. Under *McLean*, a creditor has an affirmative duty to inform the guarantor of facts known to the creditor that materially increase the guarantor's risk beyond that which the guarantor intends to assume and which the creditor may reasonably believe to be unknown to the guarantor. *McLean*, 119 Ill. 2d at 417, 519 N.E.2d at 458. However, an express term to the contrary will obviate that duty. Here, the express terms in the guaranty provided that Bank One was under no obligation to inform Roscetti of Illini's financial condition, and Roscetti waived his right to all notices in connection with Illini's obligations. Thus, if there was a check-kiting scheme, and Bank One knew anything about it, there was no good-faith violation in Bank One's failure to inform Roscetti about it.

Roscetti's sixth factual allegation is that Bank One misrepresented that it was monitoring Illini and Dellomo and that everything was satisfactory. As we have already discussed, Bank One was not under any obligation to inform Roscetti about Illini's or Dellomo's financial condition, and Roscetti waived all notices in connection with Illini's obligations under the loan. In addition, the guaranty was absolute, regardless of whether Bank One protected or exercised its rights against Illini. Accordingly, no good-faith violation resulted from Bank One's alleged failure to adequately monitor Illini or to inform Roscetti about Illini's financial condition.

In sum, we conclude that the express terms of the guaranty negate all of Roscetti's claims of good-faith violations, and the trial court incorrectly held that Bank One violated the duty of good faith and fair dealing.

## C. Summary Judgment

■ Bank One contends that the trial court erred in granting summary judgment because even if Roscetti can state a good-faith defense based upon Bank One's failure to inform him of the alleged check-kiting scheme, issues of material fact exist as to whether such a scheme was being operated and whether Bank One had any knowledge of it. Because we have concluded that Roscetti cannot state a good faith defense based upon Bank One's failure to inform him of the check-kiting scheme, we conclude that this issue is moot.

## D. Fifth Affirmative Defense

■ Bank One contends that the trial court erred in granting Roscetti leave to file a fifth affirmative defense and simultaneously granting judgment, because it had no opportunity to reply. Under section 2—616 of the Code of Civil Procedure (Code) (735 ILCS 5/2—616

(West 1998)), amendments to pleadings, including those adding defenses, may be allowed at any time before final judgment on just and reasonable terms. A party must first seek and obtain the court's permission to file the amendment. *In re Estate of Zander*, 242 Ill. App. 3d 774, 776, 611 N.E.2d 86, 88 (1993). However, the provisions of section 2—616 of the Code are directory, not mandatory, and may be forfeited. An adverse party is not harmed by a failure to obtain leave if no element of surprise or prejudice results from the failure. *Zander*, 242 Ill. App. 3d at 777, 611 N.E.2d at 88.

■ In the instant case, Roscetti filed a motion seeking leave to file his fifth affirmative defense on April 9, 1998. Roscetti did not obtain leave, but filed his fifth affirmative defense on April 14, 1998. Bank One neither objected to Roscetti's failure to obtain leave nor filed a reply to the defense any time between April 14, 1998, and December 2, 1998. However, it argued the merits of the fifth defense in a reply memorandum filed on April 14, 1998, the same day the defense was filed. Bank One failed to raise any issue regarding lack of leave until December 31, 1998, when it filed a motion to reconsider and vacate judgment. Thereafter, on March 3, 1999, Bank One finally filed its reply to the fifth affirmative defense.

Under these circumstances, Bank One's objection is meritless. Bank One was fully aware of the content of the fifth affirmative defense as early as April 14, 1998, and had ample opportunity to reply to it before the trial court entered its ruling.

## III. CONCLUSION

We conclude that the trial court erred in granting summary judgment in favor of Roscetti. We reverse and remand to the trial court to vacate summary judgment in favor of Roscetti, to enter summary judgment in favor of Bank One, and to determine the amount of the judgment. In determining the amount of the judgment, the trial court must hold further proceedings to resolve the issue of mutual mistake of fact with respect to the unlimited nature of the guaranty.

Reversed and remanded.

STEIGMANN and McCULLOUGH, JJ., concur.