In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-3209

SANTANU DAS,

*Plaintiff-Appellant,*

*v.*

TATA CONSULTANCY SERVICES LTD.
and AMIT BAJAJ,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22-C-6988 — **Virginia M. Kendall**, *Chief Judge.*

ARGUED MAY 29, 2024 — DECIDED OCTOBER 4, 2024

Before EASTERBROOK, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Tata Consultancy presented its highest-performing employees with a compensation incentive plan under which, if they achieved a certain sales target, they would receive a bonus exceeding $400,000. One of those employees, Santanu Das, achieved the target, but Tata paid him less than $100,000. Das sued Tata under an Illinois law

requiring employers to pay their employees all agreed-upon compensation. Tata moved to dismiss, arguing it never assented to the terms of the incentive plan because of the plan's boilerplate disclaimers. The district court dismissed Das's complaint, and Das has appealed.

**I**

Each year Tata Consultancy offered incentives to its sales associates of greater pay for increased sales. In April 2020 Tata invited sales associate Santanu Das to participate in such a plan available only to outstanding salespeople. He learned through weekly calls with Tata leadership that the maximum amount he could earn under the plan was $432,040. In August 2020 Tata showed a PowerPoint presentation to plan participants including Das. The presentation detailed the same plan information and pay structures.

After Das had been working under the plan for months, he learned something new about it. A week after the presentation, Tata's head of sales sent an email with a document that he said was the "formal" version of the plan—supposedly a confirmation of the information in the presentation. But this confirmation introduced critical language: Amid a list of disclaimers, Tata stated it retained total discretion as to whether to pay the sales associates under the incentive plan and that the plan was not a contract.

By the end of the fiscal year, in March 2021, Das had exceeded the upper sales threshold under the plan. But Tata did not pay Das $432,040. Instead it paid him $97,000. Das asked about the discrepancy between his bonus and the plan maximum incentive compensation but received no explanation. In April 2022 he was demoted.

Das sued Tata and Amit Bajaj, Tata's president and head of sales, in December of that year.[1] Das alleged that Tata violated the Illinois Wage Payment and Collection Act, 820 ILL. COMP. STAT. 115 *et seq.*, and committed the tort of unjust enrichment by failing to pay him the full bonus. He further claimed that Tata retaliated against him by demoting him after he complained about the unpaid bonus, for which the Wage Act also provides a cause of action.

Tata moved to dismiss for failure to state a claim, which the district court granted without prejudice. Das amended his complaint, repleading the three original claims and adding new breach of contract and fraudulent misrepresentation claims. Tata again moved to dismiss, and the district court again found that Das had failed to state a claim. This time the court dismissed his three repleaded claims with prejudice but gave him leave to replead his two new claims.

Das did not exercise that leave and instead appeals only his Wage Act and fraudulent misrepresentation claims. The district court dismissed the Wage Act claim because it found that Das did not plead an agreement to pay wages. The formal written plan was not an agreement, the court explained, because it included language disclaiming the existence of a contract and reserving to Tata the discretion whether and how much to pay its employees. In support, the court cited a handful of cases establishing that such disclaimers prevented the formation of mutual assent. To the court, Das had not "shown that past practice between the parties would plausibly

---

[1] We sit in diversity jurisdiction and apply Illinois law to the substantive issues Das's appeal raises. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Green Plains Trade Grp., LLC v. Archer Daniels Midland Co., 90 F.4th 919, 921 (7th Cir. 2024).

indicate mutual assent." The court also dismissed the new fraudulent misrepresentation claim, reasoning that Das's allegation amounts to "a single broken promise." These claims, it explained, required much more—a fraudulent scheme— than Das had alleged with the particularity fraud claims require.

## II

Das appeals from the grant of a motion to dismiss, so we review the district court's decision de novo, taking the facts in Das's complaint as true and viewing them in the light most favorable to him. *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024). First we discuss his Wage Act claim, and then his fraudulent misrepresentation claim.

## A

Das claims that Tata wrongfully paid him a smaller bonus than he had earned. The Wage Act, 820 ILCS 115/1 *et. seq.*, provides employees like Das "with a cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016).

To state a claim under the Wage Act, an employee must "demonstrate that [he is] owed compensation from defendants pursuant to an employment agreement." *Id.*; *Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021). The employer need not be bound by a "formally negotiated contract" for the employee to succeed. *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 356 Ill. App. 3d 1060, 1067 (2d Dist. 2005). An "agreement" alone is sufficient, 820 ILL. COMP. STAT. 115/2, and an "agreement" is nothing more than "a manifestation of mutual assent on the part of two or more persons … ." *Landers-Scelfo*, 356 Ill. App. 3d at 1067 (quotations omitted). At the pleading stage, all Das

must do is "'plead facts showing mutual assent to terms that support recovery.'" *Bradley v. Village of Univ. Park*, 59 F.4th 887, 904 (7th Cir. 2023) (quoting *Landers-Scelfo*, 356 Ill. App. 3d at 1068).

This claim concerns money Das believes Tata should have paid him while he was employed, so the "wages" at issue under the Wage Act encompass "any compensation owed [Das] by [Tata] pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILL. COMP. STAT. 115/2.

Das alleges that Tata's formal, written bonus plan constituted the agreement to pay compensation necessary to keep his complaint alive. Tata disagrees and insists the formal plan's disclaimers indicate it never manifested mutual assent to the terms of the formal plan. The language in question in the plan includes these provisions:

> Any incentive bonus payment made to an individual under the Plan is made at the sole discretion of the Corporate Vice President … . It is at the sole and total discretion of management whether there is any bonus … . It should not be assumed that past payments have established a pattern for future payments. … Payment under this Plan is subject to the company's discretion. It does not create a contract between you and TCS … .

Dist. Ct. DE 23-2 at 2.

The key inquiry is whether under Illinois law the disclaimers are incompatible with mutual assent. Illinois courts have not directly answered this question, but they have twice

allowed Wage Act claims to proceed in the face of such language. An Illinois Department of Labor regulation is in accord with the rule in those cases.

In *McCleary v. Wells Fargo Securities, L.L.C.*, 2015 IL App (1st) 141287, an employee brought a Wage Act claim when he was denied a discretionary bonus after his employment was terminated. *Id.* ¶¶ 8–9. While employed, the plaintiff was partly compensated by way of a performance bonus subject to a written plan. *Id.* ¶¶ 4–5. The plan specified it was "not an employment contract" and there "[was] no guarantee that a bonus of any amount" would be awarded. *Id.* ¶¶ 6–7 (alteration in original). After his employment was terminated, *id.* ¶ 4, he was not paid the share of his bonus for his pre-termination work, *id.* ¶ 8, and he brought a breach of contract claim and a Wage Act claim, among others, *id.* ¶ 10.

The Illinois court held that the employee's Wage Act claim could proceed because he had sufficiently pleaded a breach of contract action and the former is "akin" to the latter. *Id.* ¶ 29. The breach of contract action did not fail because of the discretionary language. *Id.* ¶¶ 20–21. Indeed, the court had no issues with that language, instead applying Illinois's well-settled caselaw for evaluating whether a party with discretion exercised that discretion within the boundaries of the contract. *See id.*

Similarly, in *Schultze v. ABN AMRO, Inc.*, 2017 IL App (1st) 162140, an employee brought a Wage Act claim after his employer paid him a discretionary bonus he claimed was too low. *Id.* ¶¶ 14–19. The plaintiff was an executive of a company during its acquisition. *Id.* ¶ 8. The acquiring company sent a new CEO to the plaintiff's company and the new CEO, not being aware of the company's bonus practices, paid the

plaintiff a bonus far smaller than the company's normal bonus formula allotted. *Id.* ¶¶ 11–16.

The discretionary nature of the bonus again posed no obstacle to the Illinois court. Rather, "[t]here was ample evidence … of [the employer's] manifestation of mutual assent and 'unequivocal promise' to award [the plaintiff] a bonus according to [the employer's] standards in exchange for his quality performance." *See id.* ¶ 24. For example, the employer had compensated the employee with both a bonus and a salary for every year he was employed except two and the employer told the employee that he was entitled to a bonus for that year. *Id.* Further, there was no reason the new CEO could have believed the employee's work was "inadequate or not deserving of a bonus." *Id.* ¶ 30.

Per these two cases, Illinois does not treat disclaimer language as necessarily preventing the formation of mutual assent to terms.

The Illinois Department of Labor has taken the same position in a regulation, which is at least persuasive guidance in support of the approach taken in these two cases. The regulation reads:

> Company policies and policies in a handbook create an agreement even when the handbook or policy contains a general disclaimer such as a provision disclaiming the handbook from being an employment contract, a guarantee of employment or an enforceable contract. While a disclaimer may preclude a contract from being in effect, it does not preclude an agreement by two or more persons regarding terms set forth in the handbook relating to compensation to

which both have otherwise assented. An agree-
ment exists even if does not include a specific
guarantee as to the duration of the agreement or
even if one or either party reserves the right to
change the terms of the agreement.

ILL. ADMIN. CODE tit. 56, § 300.450.

Illinois values the opinion of the agency "charged with the administration and enforcement of the statute." *Ill. Consol. Tel. Co. v. Ill. Com. Comm'n*, 95 Ill. 2d 142, 152 (1983); *see McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 544 (2d Dist. 2009). And its courts look to state Department of Labor regulations in other Wage Act contexts. *See McLaughlin*, 395 Ill. App. 3d at 544. Like *McCleary* and *Schultze*, the regulation supports Das's view of Illinois law.

The district court here saw Illinois law differently. Siding with Tata—concluding that Illinois views boilerplate disclaimer language as fatal to mutual assent—the court rested its decision on several Northern District of Illinois cases in which disclaimer language precluded an agreement. These cases, the district court explained, hold that disclaimers "dissolve" Wage Act claims because they "negat[e] mutual assent." *See, e.g., Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1075 (N.D. Ill. 2005); *Wilkinson v. Acxiom Corp.*, 611 F. Supp. 3d 547, 557 (N.D. Ill. 2020).

But not all disclaimers are the same. Tata, for example, included two disclaimers in its formal incentive plan. Tata first said the formal plan is not a contract, and second that it would retain discretion to decide whether to pay a bonus at all. The would-be-agreement in *Skelton* featured disclaimer language "negat[ing] a finding of contract formation." 382 F. Supp. 2d at 1075. And while *Wilkinson* contained a similar clause, *see*

611 F. Supp. 3d at 551, it also contained the discretionary language, *id.*, which the court focused on when explaining why the employee's Wage Act claim failed, *id.* at 557. The two disclaimers are different, so Illinois contract law treats them differently. Amid their differences, though, is one similarity: Illinois says neither categorically precludes the formation of an agreement.

Given *Schultze*, *McCleary*, and the Illinois Department of Labor regulation, Illinois contract law points toward Das's view of the Wage Act. The language at issue in *Skelton*—a disclaimer that the writing is not an express or implied contract—prevents the formation of a contract because "there simply is no promise that an employee can reasonably interpret as an offer to be bound." *Sutula-Johnson v. Off. Depot, Inc.*, 893 F.3d 967, 972 (7th Cir. 2018) (applying Illinois law in diversity). Illinois does not provide that a disclaimer such as this one precludes contract formation in every instance. *See Perman v. ArcVentures, Inc.*, 196 Ill. App. 3d 758, 765 (1st Dist. 1990). Sometimes, other sources can establish that a contract was formed despite the drafter's inclusion of that language. *Id.* Regardless, "[i]f the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning," *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011), and a clause stating that a contract has not been formed probably does not mean more than what it says.

The language at issue in *Wilkinson*—a clause reserving to the promisor discretion whether to perform—also does not necessarily prevent the formation of a contract. *XL Specialty Ins. Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶¶ 72–74. Illinois courts long have had no problem enforcing contracts with discretionary promises. *See Diamond v. UFCW Union Loc. 881*, 329 Ill. App. 3d 519, 526–27 (2d Dist.

2002); *Bank One, Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1059–60 (4th Dist. 1999). These cases recognize a fundamental contractual principle: A promisor holding performative discretion still has a duty to exercise discretion within the limits the parties would have contemplated at the time of contracting. *See* 1 CORBIN ON CONTRACTS § 1.17. Under Illinois law, every contract has at least one limit—to perform within the bounds of "good faith and fair dealing." *Bank One*, 309 Ill. App. 3d at 1059. Again, we doubt Illinois gives this language a categorical, agreement-preclusive effect.

In concluding that the disclaimers preclude an agreement, the district court also disagreed that Das and Tata's prior relationship could provide a separate path to mutual assent. Illinois does treat the parties' pattern of activity as relevant to ascertaining whether an employee has pled an agreement. *Landers-Scelfo*, 356 Ill. App. 3d at 1068 ("Indeed, employers and employees can manifest their assent to conditions of employment by conduct alone."); *Schultze*, 2017 IL App (1st) 162140, ¶¶ 27–28 (prior relationship established that employer agreed to pay employee a certain amount in bonus compensation); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 3, comment b (1981); *Bd. of Educ. of Arbor Park Sch. Dist. No. 145 v. Ballweber*, 96 Ill. 2d 520, 526–27 (1983). This further demonstrates that Illinois does not recognize a categorical rule about the impact of disclaimer language on an agreement.

Das and Tata's prior relationship carries this appeal even further. Tata's regular payment of incentive plan compensation to Das may constitute the manifestation of mutual assent to terms that Das needs to move past the pleadings stage. Das has alleged, "[e]ach year, Tata gave its salespeople compensation plans in which it promised to pay salespeople incentive

compensation per specific formulae and calculations," and "[e]ach year, [Tata] did what it promised, and it paid its sales-people per these formulae." Tata does not deny it had a practice of compensating sales employees with incentive plans.

The district court disagreed that past practice established that Tata and Das mutually assented to the terms of the bonus plan. It concluded that the presence of disclaimers and discretionary language in those past plans "would undermine Das's attempt to plead mutual assent." But this determination cannot be made on the complaint alone, within which all Das must do is "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928, 943 (7th Cir. 2024).

The Illinois authorities we have reviewed persuade us that, on a motion to dismiss, a written incentive plan with boilerplate disclaimers does not categorically preclude the finding of a Wage Act agreement between the parties. This is especially true where the plaintiff has alleged a history between the parties of the type of conduct at issue in the putative agreement. The essential question to answer in these cases is whether the plaintiff can "show[] mutual assent to terms that support the recovery." *Landers-Scelfo*, 356 Ill. App. 3d at 1068.

Das has provided "sufficient factual matter … to draw the reasonable inference" that Tata manifested mutual assent to pay Das pursuant to the terms of the incentive plan. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The disclaimer language alone in the written plan does not preclude Tata's agreement to pay Das under the plan's terms. One plausible source of agreement between Das and Tata is Tata's history of paying

bonuses earned via incentive plans which, as the district court noted, also included disclaimer language. So, Das's Wage Act claim survives the motion to dismiss for failure to state a claim.

**B**

Das also alleges that Tata's decision not to pay him according to the formal plan constituted fraud. To plead a claim for fraudulent misrepresentation under Illinois law, a plaintiff must at least allege a false statement of material fact. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (citing *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 847 (1st Dist. 2009)). When a complaint alleges a fraudulent misrepresentation regarding future promises, it survives a motion to dismiss only if it also alleges a scheme to defraud. *Sommer v. United Sav. Life Ins. Co.*, 128 Ill. App. 3d 808, 814 (2d Dist. 1984). This "elaborate artifice of fraud" must encompass a "large[] pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1355, 1354 (7th Cir. 1995).

Illinois is "ambivalen[t] … about allowing suits to be based on nothing more than an allegation of a fraudulent promise," for such an allowance would "risk … turning every breach of contract suit into a fraud suit … ." *Desnick*, 44 F.3d at 1354. Yet that is all Das alleges—that Tata said it would pay him according to the plan's formulae. The logic in *Desnick* applies to a Wage Act claim just as it would a breach of contract claim. *See McCleary*, 2015 IL App (1st) 141287, ¶ 29 ("Claims for violation of the [Wage] Act are akin to breach of contract actions." (citation omitted)). So, we affirm the district court's dismissal of the fraudulent misrepresentation claim.

**III**

Tata provided Das with a written plan detailing the sales targets that must be reached to earn a certain amount of incentive compensation. He hit those targets, but Tata did not pay him that bonus. Das has plausibly alleged that Tata agreed to pay him the full amount, so the district court's decision to dismiss the Wage Act claim is REVERSED and the case is REMANDED on that claim. Because Das has not plausibly alleged that Tata's withholding of the full bonus is fraud, the district court's decision to dismiss the fraudulent misrepresentation claim is AFFIRMED.